Harold WEISBERG, Appellant

v.

William H. WEBSTER, Director, Federal Bureau of Investigation, et al.

Harold WEISBERG, Appellant

v.

FEDERAL BUREAU OF INVESTIGATION, et al.

Harold WEISBERG and James H. Lesar, Appellants

v.

William H. WEBSTER, Director, Federal Bureau of Investigation, et al.

Harold WEISBERG and James H. Lesar, Appellants

v.

FEDERAL BUREAU OF INVESTIGATION, et al.

Nos. 84–5058, 84–5059, 84–5201 and 84–5202.

United States Court of Appeals, District of Columbia Circuit.

Argued 25 Oct. 1984.

Decided 7 Dec. 1984.

ings. We note, however, that the Board is required to meet its burden of developing a record to substantiate its position.

Mark H. Lynch, Washington, D.C., with whom Susan W. Shaffer, Washington, D.C., was on brief, for appellant Weisberg.

Cornish F. Hitchcock, Washington, D.C., with whom Alan B. Morrison, Washington, D.C., was on brief, for appellant Lesar.

Christine R. Whittaker, Atty. Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellees.

Before WILKEY, WALD and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

This case involves an appeal from dismissal of the case by the District Court, for failure by plaintiff to respond to the FBI's discovery request. Appellants argue that dismissal was improper both as a matter of law and under the particular facts of this case. They also argue that the trial court erred in not granting them a protective order and in awarding expenses to the FBI. Appellant Lesar, counsel below for appellant Weisberg, also argues separately that it was error to include him in the award of expenses. We find that the trial court was within its discretion in denying the protective order and in dismissing the case. However, we remand the question of awarding expenses.

## I. BACKGROUND

Plaintiff filed this suit in 1978, seeking information from the FBI concerning the assassinations of President John F. Kennedy and Martin Luther King. The suit was filed under the Freedom of Information Act ("FOIA").[1] During the next few years, the FBI conducted many searches and released thousands of documents to the plaintiff. Plaintiff filed various appeals, outlining his objections to the information provided, with the Office of Privacy and Information Appeals (OPIA) in the Department of Justice.[2]

---

1. Pub.L. No. 89–487, 80 Stat. 250 (1966) (amended 1974).

2. Pursuant to Department of Justice regulations, OPIA is responsible for processing administra-

This office is responsible for appeals from denials of FOIA requests. After several additional requests and searches during a period of approximately four years, OPIA finally informed the plaintiff that if he desired more information, he should seek an order of the court to get it. By this time the FBI had released more than 200,-000 pages of documents to plaintiff as a result of his FOIA requests.[3] We engage in a detailed recital of the procedural facts, since it is on the lengthy and somewhat complex procedural steps taken by the parties and the District Court that the justification of the District Court's action rests.

Due in part to the overwhelming number of documents in the case, the trial court was anxious that the parties reach an agreement between themselves. The FBI proposed a random sample by which to judge the merits of the exemptions which it had claimed. Plaintiff opposed the suggestion.[4] The FBI eventually proposed bifurcating the case into two parts: (1) the adequacy of the search and (2) the validity of the exemptions. In May 1982 defendants moved for a partial summary judgment on the search issue. This motion was denied, and the court specifically found that the search was inadequate to justify summary judgment.[5]

On 6 December 1982 defendant sought discovery from plaintiff of "each and every fact" and "each and every document" upon which plaintiff based his fourteen contentions on the inadequacy of the FBI's search. On 17 January 1983 plaintiff moved for a protective order excusing him from responding to the FBI's interrogatories. Plaintiff's motion for a protective order was based on three arguments: (1) There was no need for a government agency to take discovery from a FOIA plaintiff on search issues because the relevant information is in the agency's possession; (2) it would be particularly burdensome for this plaintiff because of a serious illness which would be exacerbated by responding to the FBI's interrogatories; and (3) the plaintiff had already provided most of the information sought in his detailed appeals to OPIA.[6] The FBI sought an order instructing plaintiff to respond, together with expenses.

On 4 February 1983 the District Court denied the motion for a protective order, denied the FBI's request for fees, and directed plaintiff to respond.[7] After denial of the protective order, plaintiff's counsel sought a two week extension in which to respond to defendants' discovery requests, stating that he had conferred with his client and "intended to complete a draft of the response to defendants' discovery by the end of this week and send it to his client" but that "a second draft may be necessary." [8] However, near the end of the extension plaintiff responded by filing particularized objections to each of the FBI's interrogatories, based on the same grounds that he had set forth in his motion for a protective order but in more specific form. Plaintiff also submitted further information concerning his illness.[9]

The FBI then moved for an order compelling response and sought expenses and fees under Federal Rule of Civil Procedure 37(a)(4). Plaintiff opposed the order and put forth an alternative, proposing that after plaintiff had completed his discovery of defendants on the search issue, plaintiff would move to compel a further search and would at that time support the motion with all the evidence upon which he relied.[10]

On 13 April 1983 the District Court granted defendants' motion to compel and on 28 April 1983 the court awarded defend-

---

tive appeals from the FBI and other components of the Department. 28 C.F.R. § 16.7.

**3.** Brief for Appellees at 18.

**4.** *Id.* at 8–9.

**5.** Joint Appendix at 16–21.

**6.** Brief for Appellant Weisberg at 9.

**7.** Joint Appendix at 30–31.

**8.** Brief for Appellees at 13.

**9.** *Id.* at 13–14.

**10.** Brief for Appellant Weisberg at 12–13.

ants their expenses and attorneys fees incurred in bringing the motion to compel. The District Court also ordered plaintiff to respond within thirty days.[11]

Near the thirty day mark, plaintiff's counsel told government counsel that his client intended to refuse to respond.[12] At the time defendants moved to dismiss the entire case. Plaintiff offered a motion to reconsider or in the alternative to certify interlocutory appeal for the 13 April and 28 April orders. The District Court granted defendants' motion to dismiss the entire case, pointing to plaintiff's "willful and repeated refusals to answer in compliance with court orders."[13] The court also awarded defendants their expenses incurred in bringing the motion to dismiss.[14] Originally, judgment was entered assessing these expenses against Weisberg only; the FBI moved to amend the judgment to assess expenses against Weisberg's counsel also. This amended final judgment was filed on 31 January 1984.[15]

Plaintiff Weisberg appeals from the denial of the motion for a protective order, the dismissal of the entire case, and the assessment of expenses against him. Plaintiff Lesar, Weisberg's counsel at trial, also appeals from all of the above actions, but in addition appeals the assessment of expenses against him personally, arguing that in the usual case expenses should be assessed against the client only.

The case presents three major issues. First, was it error for the District Court to order a plaintiff in a FOIA case to answer the government's discovery requests? Appellants also argue here that even if such a discovery request might sometimes be granted it was error for the District Court to grant such a request in light of Weisberg's poor health and in light of the fact

that Weisberg had already furnished much of the material requested in his administrative appeals. Second, was it error for the District Court to impose the sanction of dismissal of the entire case? Third, was it error for the District Court to impose expenses against appellant Weisberg and against his counsel? We will examine each of these issues in turn.

## II. ANALYSIS

### A. Propriety of Allowing Discovery by a Government Agency of a FOIA Plaintiff

Appellant's main argument against the general notion of allowing discovery of FOIA plaintiffs is that the FOIA places the burden of proof on the government.[16] Yet the placement of the burden of proof in most instances has nothing to do with the propriety of one side or the other engaging in discovery. The proper inquiry is whether anything in the FOIA or the statutes and cases governing discovery point to an exemption from discovery for FOIA plaintiffs.

Rule 1 of the Federal Rules of Civil Procedure, which deals with the "scope of the Rules," states that "[t]hese Rules govern the procedure in the United States district courts in all suits of a civil nature ... with the exceptions stated in Rule 81."[17] Rule 81 contains no exception for FOIA suits or suits involving the government. The Freedom of Information Act was signed into law on 4 July 1966.[18] Rule 81 was amended in 1967 and 1971.[19]

Rule 26, which contains "general provisions governing discovery," states that "[t]he parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in

---

**11.** Joint Appendix at 66–67, 85–86.

**12.** Brief for Appellant Weisberg at 14.

**13.** Joint Appendix at 344–49.

**14.** *Id.* at 357–58.

**15.** *Id.* at 359.

**16.** Brief for Appellant Weisberg at 19.

**17.** FED.R.CIV.P. 1.

**18.** *See supra* note 1.

**19.** *See* Advisory Committee Notes in 28 U.S.C.A., FED.R.CIV.P. 81.

the pending action." [20]   Rule 33, which specifically refers to interrogatories, states, "[a]ny party may serve upon any other party written interrogatories." [21]   As one commentator has explained, "[n]o type of action, within the coverage of the Federal Rules, is excepted from the operation of Rules 26 through 37 (discovery)." [22]

Neither is there anything in the Freedom of Information Act which bars the government from engaging in discovery.  The judicial review section of the Act [23] simply vests the district courts with equitable jurisdiction to enjoin wrongful withholding.  The Act seems to contemplate disposition of FOIA litigation according to regular and prescribed procedure.  This interpretation is in accordance with the Third Circuit's decision in *Martin v. Neuschel*,[24] holding that the district court lacked authority to order FOIA disclosure without giving the defendant public officer "the right to plead whatever defense he may and to have the merits of the controversy decided in regular course."  The court noted that "the government and its officers, as well as private citizens, are entitled to due and regular process in the pleading, hearing, consideration and disposition of litigated claims." [25]

When Congress intended to created exceptions to regular civil procedures in FOIA litigation, it has stated these exceptions specifically.  Thus, the 1974 amendments to FOIA reduced the government's time to answer from the usual sixty days allowed the government under Rule 12(a) to thirty days.[26]

█   Finally, there is nothing in the policy behind FOIA to indicate that the discovery rules in FOIA suits are available to private litigants but not to the government.

The government should be able to use the discovery rules in FOIA suits like any other litigant, to uncover facts which will enable it to meet its burden of proving either the adequacy of its search or the exempt status of requested documents.  The government may also properly desire to use discovery in FOIA suits "as a device . . . to narrow and clarify the basic issues between the parties." [27]   In doing so, the government does not, and indeed cannot, shift the burden of proof placed on it by the statute.  Nor will it be permitted to use discovery to frustrate the purposes of the FOIA.  Discovery must be relevant to the subject matter involved in the pending action,[28] and in the usual FOIA case, the government will be in possession of all such evidence.  For that reason, in the context of FOIA litigation courts will guard against the use of discovery as an instrument of abuse, just as they would in any other case.  This is not to say that FOIA cases merit special protection against discovery abuse, but only that judges, as a practical matter, will naturally take note of the posture of the usual FOIA case, in the same way that they would take note of the posture of any case.  But in any proceeding where discovery of the FOIA plaintiff is justified, the government, just as any other litigant may use discovery in order to meet more efficiently its burden of proof.  In this particular case, it is entirely possible that the individual members of the agency involved are not as astute or as knowledgeable as to what they have in their files as the plaintiff-requester, who has devoted twenty years of his life to these issues.  The government-defendant may properly draw on that expertise in

**20.**   Fed.R.Civ.P. 26.

**21.**   Fed.R.Civ.P. 33.

**22.**   4 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 26.51 (2d ed. 1976); *see also* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2004 (1970).

**23.**   5 U.S.C. § 552(a)(4) (1982).

**24.**   396 F.2d 759 (3d Cir.1968).

**25.**   *Id.* at 760.

**26.**   *Compare* Fed.R.Civ.P. 12(a) (60 days), *with* 5 U.S.C. § 552(A)(4)(c) (amended 1974) (30 days).

**27.**   *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388–89, 91 L.Ed. 451 (1947).

**28.**   Fed.R.Civ.P. 26(b)(1).

order to respond to plaintiff's FOIA request.

In addition, the FBI's motion for partial summary judgment on the adequacy of the search was defeated on the strength of assertions by plaintiff that information in his possession demonstrated the inadequacy of the search. Once the District Court had ruled against the adequacy of the search, fairness required that the agency be allowed access to any documents which go to the adequacy of the search, in order to respond to the charge that its search was inadequate, or to make its search adequate.

Appellant also argues, however, that in the particular circumstances of this case, allowing discovery of a FOIA plaintiff was error. This argument focuses on the averment that Weisberg suffers from an illness which would make a personal response to the discovery request very difficult. Appellant filed affidavits with the District Court, describing the medical problems in detail. Weisberg suffers from serious circulatory problems, and is under doctor's orders "not to stand still, to sit only with [his] legs elevated, and not to sit for more than 20 minutes at a time without getting up and walking around." [29] This limits his ability to search through the file cabinets, located in his basement, in order to respond to the FBI's interrogatories.

The FBI challenges the extent to which Weisberg is physically unable to respond to discovery. The FBI points out that during the very time when Weisberg was arguing that illness made responses to discovery nearly impossible, he was also filing voluminous, detailed affidavits with the court.[30]

In addition, the realities of client response to discovery make this task a little less Brobdingnagian than a solitary search by Weisberg through all of the sixty file cabinets in his basement. From the nature of Weisberg's administrative appeals, his opposition to partial summary judgment and his subsequent affidavits, it is clear that Weisberg has some system for determining what is in his files, and where. It is not at all unusual for the attorney involved to do a great deal of the work of responding to discovery. With Weisberg's assistance and direction, it was feasible for Lesar (Weisberg's trial attorney) to respond to the FBI's interrogatories. Apparently Lesar himself felt that such a course was possible. Following denial of appellants' motion for a protective order, Lesar sought (and was granted) a two week extension. In that motion, Lesar stated that he had conferred with his client and "intended to complete a draft of the response to defendants' discovery by the end of this week and send it to [his] client" but that "a second draft may be necessary." [31] Although such a response was never produced, counsel apparently felt capable of preparing a draft response by himself even before sending it to his client.

■ Of course the District Court has already had the opportunity to consider these arguments in great detail. In addition, it had the opportunity to deal with these parties face-to-face over an extended time. Following consideration of all these factors, the District Court denied plaintiff's motion for a protective order, and subsequent motions to reconsider. With ample evidence to support its decision, it was well within the District Court's discretion to order this particular FOIA plaintiff to respond to the FBI's discovery request.

B. *The Propriety of Dismissal as a Sanction*

■ Admittedly, dismissal is a severe sanction, and should be resorted to only to the extent "necessary to induce future compliance and preserve the integrity of the system." [32] However, in assessing the propriety of a dismissal our task is limited by the proper scope of appellate review.

---

**29.** Joint Appendix at 39.

**30.** Brief for Appellees at 29.

**31.** *Id.* at 13.

**32.** *Litton Sys., Inc. v. American Tel. & Tel. Co.,* 91 F.R.D. 574, 576 (S.D.N.Y.1981), *aff'd,* 700 F.2d 785 (2d Cir.1983).

This Court has stated that "the district court has been delegated a good deal of discretion in making discovery orders and enforcing them with sanctions."[33] In evaluating the exercise of that discretion, as the Supreme Court has stated in *National Hockey League v. Metropolitan Hockey Club*, "[t]he question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing."[34]

■ Appellant argues that he engaged in no "extreme bad faith" or "callous disregard" sufficient to justify dismissal. These are standards which appellant derives from the *Black Panther* case,[35] which has been vacated on mootness grounds and thus cannot be considered authoritative law of this circuit. Even if we were to regard it as merely enlightening authoritative commentary, its reasoning would not be applicable here. The case involved claims of constitutional privilege (under both the first and fifth amendments) from responding to certain interrogatories.[36] The district court also noted that, as to the interrogatories which did not involve a claim of constitutional privilege, plaintiffs had made " 'a good faith effort to provide full and complete answers.' "[37] The crux of the *Black Panther* holding is focused on the propriety of dismissal when there are serious constitutional questions concerning the validity of the underlying discovery order.[38]

The correct standard for evaluating what conduct justifies dismissal comes from cases such as *National Hockey League* and *Societe International pour Participations Industrielles et Commerciales v. Rogers*.[39] In *National Hockey League* the Supreme Court upheld the sanction of dismissal under Rule 37. In the course of its opinion, the Court (which reversed the Third Circuit's reversal of the trial court's dismissal) cautioned appellate courts against an overabundance of lenity in reviewing dismissal, stating that lenity "cannot be allowed to wholly supplant other and equally necessary considerations embodied in that Rule."[40] The Court went on to describe these other, "equally necessary conditions."

There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.

But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. If the decision of the Court of Appeals remained undisturbed in this case, it might well be that *these* respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should

---

**33.** *Smith v. Schlesinger*, 513 F.2d 462, 467 n. 12 (D.C.Cir.1975).

**34.** 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976).

**35.** *Black Panther Party v. Smith*, 661 F.2d 1243 (D.C.Cir.1981), *judgment vacated sub nom. Moore v. Black Panther Party*, 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982).

**36.** 661 F.2d at 1250.

**37.** *Id.* at 1252.

**38.** *Id.* at 1256.

**39.** 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).

**40.** 427 U.S. at 642, 96 S.Ct. at 2780.

feel to flout other discovery orders of other district courts. Under the circumstances of this case, we hold that the District Judge did not abuse his discretion in finding bad faith on the part of these respondents ....[41]

This emphasis on the deterrent function of Rule 37 also explains the result in *Societe Internationale,* where dismissal was found not justified. *Societe Internationale* also sheds further light on the degree of misbehavior required to justify dismissal. In *Societe Internationale* the noncompliance with a discovery order was prompted by foreign nondisclosure laws which would have imposed criminal sanctions for disclosure of the documents sought.[42] The Court explained "that Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner."[43]

■ Read together, *National Hockey League* and *Societe Internationale* require a minimum of "willfulness, bad faith, or [some] fault" to justify dismissal, although the clear import of *Societe Internationale* is that mere failure to respond to discovery is sufficient to justify less severe sanctions.[44] Subsequent interpretations continue to require that dismissal under Rule 37 be based on willfulness or at least gross negligence.[45] There is no argument in this case that appellants' noncompliance with court orders was anything other than will-

ful. Neither can appellant bring himself under that part of the *Societe Internationale* holding which disallows dismissal for inability to comply with discovery order.[46]

This Court has noted that the Supreme Court's warning in *National Hockey League* against too much leniency "has special significance in the case of interrogatories which are supposed to be served and answered without the need for judicial prompting."[47] We went on to say that if "parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules."[48] That appears to be exactly what has happened in this case.

Examination of cases in other circuits demonstrates that appellants' behavior in this case is on a par with the sort of behavior which has justified dismissal elsewhere. For example, the Ninth Circuit upheld the dismissal of the case in *G–K Properties v. Redevelopment Agency.*[49] That case involved a court order to produce documents. The order was filed on 28 October 1975. In response to the court's order, plaintiffs' counsel did supply a large portion of the requested documents. However, four months later, the plaintiffs had not yet completely responded to the court's order. On 10 February 1976 defendants moved for dismissal as a sanction for plaintiffs' failure to comply with the discovery order. Three days prior to the hearing on

---

**41.** *Id.* at 642–43, 96 S.Ct. at 2780–81.

**42.** 357 U.S. at 200–03, 78 S.Ct. at 1089–91.

**43.** *Id.* at 212, 78 S.Ct. at 1096.

**44.** This interpretation of Rule 37 was embodied in the 1970 amendments to Rule 37. The drafters of the amendments interpreted *Societe Internationale* to indicate "that willfulness was relevant only to the selection of sanctions, if any, to be imposed." Advisory Committee Note, *reprinted in* 4 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 37.01[8], at 37 (2d ed. 1976); *see also* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2283 (1970).

**45.** *See, e.g., Penthouse Int'l v. Playboy Enters.,* 663 F.2d 371, 388 (2d Cir.1981); *Flaks v. Koegel,* 504 F.2d 702, 708–09 (2d Cir.1974).

**46.** *See supra* p. 869.

**47.** *Dellums v. Powell,* 566 F.2d 231, 235 (D.C.Cir. 1977).

**48.** *Id.* at 235–36.

**49.** 577 F.2d 645 (9th Cir.1978).

the dismissal motion, the plaintiffs actually did tender the requested documents. The trial court rejected plaintiffs' tender of those documents, and dismissed the case "to protect the integrity of its orders." [50] The Ninth Circuit said that the trial court had "acted properly in so doing." It added that:

> We encourage such orders. Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism.[51]

Appellants in this case also argue that even if dismissal of some part of the case is upheld, special circumstances make dismissal of the entire case inappropriate. This action was bifurcated into two separate proceedings, the first dealing with the adequacy of the search and the second with the validity of the FBI's use of FOIA exemptions.[52] Although all of the events in this discovery dispute arose during the first proceeding on the adequacy of the search, the District Court dismissed the entire case.

If dismissal is to perform the deterrent function envisioned in *National Hockey League*, dismissal of the entire case will often be necessary, even when the discovery dispute is focused on a single claim. If the most that can be put at risk by recalcitrant behavior is dismissal of the disputed claim, the recalcitrant party will often have an incentive to test the court. His obstreperousness may result in some compromise on the disputed claim, which works to his benefit. If he is unlucky and suffers a limited dismissal, he only loses what he would have lost anyway—the particular point at issue. Limited dismissal may present him with nothing to lose and something to gain.

The District Judge in this case was particularly close to the proceedings. He was aware of what efforts had been made by the parties to conform to his orders. In accordance with the deference to trial court discretion required by *National Hockey League*, and in comparison with the facts which led to dismissal in other cases, we hold that the trial court was within its discretion to dismiss the entire case.

## C. The Award of Expenses and Attorneys Fees

The two appellants here raise several issues with regard to the trial court's award of expenses and attorneys fees to defendants pursuant to Rule 37(a)(4) and 37(b)(2). Appellants argue that their opposition to defendants' discovery was "substantially justified," [53] such that it was error for the District Court to award defendants their expenses and attorneys fees. Appellant Lesar also argues that it was error for the District Court to charge both the lawyer and the client with attorneys fees and costs for resisting discovery when the record indicated that the client was responsible for resisting discovery, and when the District Court failed to inquire into their relative culpabilities or to specify why the lawyer should be held jointly liable. Finally, both appellants also argue that it was error for the District Court to award attorneys fees and expenses to defendants when defendants' counsel did not support his application for attorneys fees with contemporaneous time records.

### 1. The documentation necessary for an award of attorneys fees

■ This Court has been very explicit about what documentation is necessary to recover attorneys fees. In a carefully crafted *per curiam* opinion in *National Association of Concerned Veterans v. Sec-*

---

**50.** *Id.* at 647.

**51.** *Id.*

**52.** Brief for Appellees at 10–11.

**53.** FED.R.CIV.P. 37.

*retary of Defense,*[54] we responded to our own question-heading, "[w]hat type of factual showing is necessary to establish the number of hours reasonably expended on the case?" This Court explained that "[c]asual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees. Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney."[55]

In this case, the government's documentation consisted of an affidavit by trial counsel, Mr. Henry LaHaie. As the government's brief explains:

> Mr. LaHaie's affidavit was based on a contemporaneous calendar indicating dates and times of court appearances and moot court preparation. Conversations with plaintiff's counsel were based on contemporaneous records of those telephone calls. Preparation of pleadings was established by the filing date and counsel submitted extremely modest times for such items. While Mr. LaHaie characterized this as "reconstructed" time records, the affidavits were in significant part based on contemporaneous records. The affidavits, moreover, were submitted shortly after argument on the motions and not at the end of lengthy litigation.[56]

While all of this information is very helpful in deciding whether this documentation satisfies *Concerned Veterans,* unfortunately none of this was before the District Court.[57] The District Court did not demand from the government attorneys the sort of detailed documentation required by *Concerned Veterans.* Accordingly, on the issue of the award of fees and costs to the government, we remand to the District Court for further documentation by the government. This would apply to both the 28 April 1983 order, and the 21 December 1983 order. Once the District Court has received the government's further documentation, it must decide whether the proffered documentation satisfies the test in *Concerned Veterans.*

### 2. *Assessing expenses against attorney Lesar*

If a party fails to obey a discovery order, Rule 37(b) of the Federal Rules of Civil Procedure requires the court to assess expenses against that party, "or the attorney advising him or both" the reasonable expenses of the party seeking discovery which were caused by the failure to obey. This is to be done "unless the court finds that the failure was substantially justified" or that the award would be otherwise unjust.

The District Court found that the failure to obey the court's order was not substantially justified. For the reasons stated above,[58] we agree. However, the District Court imposed liability for expenses not only against the noncomplying party, but also against his attorney, Mr. Lesar. The District Court amply supported its imposition of sanctions against Weisberg in its memorandum of 18 November 1983. But nowhere does the court explain its reasons for imposing sanctions directly against Lesar.

■ We recognize that Rule 37 allows for imposition of liability for expenses against a party, his attorney, or both, and that the apportionment of that liability is left to the discretion of the trial court. But that determination is as much a subject of appellate review as any other and must be

---

54. 675 F.2d 1319 (D.C.Cir.1982).

55. *Id.* at 1327.

56. Brief for Appellees at 49.

57. Reply Brief for Appellant Weisberg at 13; Joint Appendix at 81, 354.

58. *See supra* section IIB; *see also Liew v. Breen,* 640 F.2d 1046, 1050 (9th Cir.1981) ("the trial court has broad discretionary powers in this area, and the issues Breen raises are not subject to such doubtful resolution that imposition of sanctions was an abuse of discretion").

adequately explained by specific findings.[59] The District Judge has already adequately explained his award of expenses against Weisberg. But the reasoning of the District Judge in his award against Weisberg does not automatically operate as justification for an award against his attorney. Rule 37 treats the client and his attorney separately. The District Judge in this case may have had separate reasons for imposing liability for expenses against attorney Lesar. The matter was raised when the FBI moved to amend the judgment of 10 January 1984 to make Lesar jointly liable with Weisberg for expenses.[60] In response to that motion, the amended final judgment of 31 January 1984 imposed expenses against both Weisberg and Lesar.

The requirement of specific findings is found in many of our cases dealing with sanctions under Rule 37. For example, Judge Burger's concurrence in *Von der Heydt v. Rogers* [61] suggested that this Court rely on its "inherent power to call for findings in aid of appellate review" to remand to the district court for findings in a case involving failure to produce certain documents.[62] That same action was taken in *Smith v. Schlesinger.* [63] In *Crawford v. American Federation of Government Employees* [64] the District Court for the District of Columbia adopted the view that an award of costs under Rule 37 against an attorney ought to be justified by reasons distinct from those justifying an award against the client.[65] Several other cases have either remanded for a specific division of liability between attorney and client, or

affirmatively explained the rationale for imposing an award against the attorney.[66]

This requirement of findings to support an award of expenses against an attorney is prompted by the structure of Rule 37, by concerns for effective appellate review, and by concerns for the tension created in the attorney-client relationship when the attorney is subject to personal liability.

■ Rule 37 places the responsibility of apportioning awards of expenses between client and counsel with the trial court. The trial court is in the best position to judge how much responsibility is due to the client's recalcitrance and how much to the lawyer's condonance or participation in the client's disobedience. In the present case, although the District Court may have analyzed such factors and reached a well-founded conclusion, no such analysis was presented in any opinion. Accordingly, on the question of the proper division, if any, of the liability for expenses between Weisberg and Lesar, we remand to the trial court for more complete findings.

### III. CONCLUSION

We hold that the plaintiff in this FOIA action was properly required by the District Court to respond to government interrogatories. We also affirm the District Court's order dismissing this case with prejudice for plaintiff's refusal to obey the orders of the Court. On the award of expenses against appellants, we remand to the District Court for determination of:

(1) Whether the documentation submitted and to be submitted by the govern-

**59.** This is consistent with the general intent of FED.R.CIV.P. 52. It is essential to effective appellate review. *See Von der Heydt v. Rogers,* 251 F.2d 17 (D.C.Cir.1958).

**60.** Brief for Appellant Lesar at 9.

**61.** 251 F.2d 17 (D.C.Cir.1958) (Burger, J., concurring).

**62.** *Id.* at 18.

**63.** 509 F.2d 538 (D.C.Cir.1975). The district court's action was subsequently affirmed in *Smith v. Schlesinger,* 513 F.2d 462, 467 (D.C.Cir. 1975).

**64.** 576 F.Supp. 812 (D.D.C.1983).

**65.** *Id.* at 815 (quoting *Humphrey's Exterminating Co. v. Poulter,* 62 F.R.D. 392, at 395 (D.Md. 1974)).

**66.** *United States v. Sumitomo Marine & Fire Ins. Co.,* 617 F.2d 1365 (9th Cir.1980) (explaining); *Stillman v. Edmund Scientific Co.,* 522 F.2d 798 (4th Cir.1975) (remand); *Ogletree v. Keebler Co.,* 78 F.R.D. 661 (N.D.Ga.1978) (explaining); *Chesa Int'l, Ltd. v. Fashion Assocs.,* 425 F.Supp. 234 (C.D.N.Y.1977), *aff'd mem.,* 573 F.2d 1288 (2d Cir.1977) (explaining).

ment to support its request for attorneys fees satisfies our test in *Concerned Veterans,* and

(2) The proper division of responsibility between lawyer and client for the conduct which led to the award of expenses, with findings by the District Court which apportion their liability.

*So Ordered.*

Scalia, Circuit Judge, filed dissenting opinion.