ARUBA BONAIRE CURACAO TRUST COMPANY LIMITED, Trustee of Supriano Trust, et al., Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 84–5698.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 2, 1985.

Decided Nov. 22, 1985.

Robert L. Dunnett, Los Gatos, Cal., for appellants.

Jonathan S. Cohen, Atty., Dept. of Justice, of the bar of the Supreme Court of Conn., pro hac vice, by special leave of Court, with whom Glenn L. Archer, Jr., Asst. Atty. Gen., and Michael L. Paup, Atty., Dept. of Justice, Washington, D.C., were on the brief for appellee.

Before ROBINSON, Chief Judge, WALD, Circuit Judge, and MCGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MCGOWAN.

MCGOWAN, Senior Circuit Judge:

In this case, the Tax Court. dismissed appellants' pending actions as a sanction for failure to present evidence at a discovery hearing. Because we find that the Tax Court had authority to dismiss these actions and did not abuse its discretion in so doing, we affirm.

## I. THE FACTS

### A. *The Underlying Tax Dispute*

Aruba Bonaire Curacao Trust Company, Limited ("ABC") is the non-resident alien trustee of the four trusts that are the subject of this action. Pursuant to its duty to manage the trusts' assets prudently, ABC invested in several land development projects in California. Unfortunately, these investments soured and ultimately produced a lawsuit in which ABC was the defendant. ABC counterclaimed, however, and won a judgment of $1,108,804.70 from the original plaintiff in the action. ABC agreed that the plaintiff could pay this sum in six monthly installments.

Before the plaintiff had paid the third installment, however, the Commissioner of Internal Revenue ("Commissioner") entered the picture. The Commissioner issued deficiency assessments against ABC, alleging that the trusts owed taxes for several years during which they were doing business in the United States. These assessments amounted to $129,549.56. The Commissioner therefore demanded that the plaintiff in the California litigation pay all sums still owing on the judgment directly to the Internal Revenue Service. Realizing that competing parties had claims to the funds, the plaintiff paid the remaining portion of the judgment into the United States District Court for the Central District of California. That court is currently holding the funds, pending resolution of the tax dispute.

### B. *The History of Discovery*

Since this case has taken such a tortuous path of delays, and those delays form the basis for the orders under review here, it is best to summarize the facts by year.

#### *1979–1980*

On April 16, 1979, ABC filed petitions with the Tax Court for review of the Commissioner's determination with respect to

each trust. By April 1, 1980, the parties in the case were ready to prepare for trial. On that date, the Commissioner informally requested the production of several relevant documents. On April 11, 1980, ABC responded with "all of the material we have in these matters." Joint Appendix ("J.A.") at 26. Apparently, these materials were produced in the California litigation. Dissatisfied with ABC's response, the Commissioner proceeded on more formal lines. On May 16, 1980, the Commissioner filed a motion to produce the requested documents pursuant to I.R.C. § 7456(b) (1982).[1]

After one continuance requested by ABC, the Tax Court held a hearing on October 16, 1980. At that hearing, the Tax Court judge ordered the appellants to respond to the government's points and authorities submitted in support of the motion to produce. The appellants never filed a written reply because counsel for the appellant, Mr. Harry Margolis, represented that he was making progress obtaining the documents requested by the Commissioner.

*1981*

In response to this development, the Tax Court ordered Mr. Margolis to submit a status report to the court on March 24, 1981. J.A. at 40. On May 6, 1981, the Tax Court ordered Mr. Margolis to:

> submit a detailed, written report containing the following information: (1) the whereabouts of the records and documents requested by respondent [the Commissioner], (2) a description of what actions petitioner's counsel is presently taking to secure such records and documents, and (3) a specific timetable as to

when the Court may expect such records and documents to be produced. This report shall be filed with the Court no later than June 1, 1981.

J.A. at 41.

On June 2, 1981, Mr. Margolis filed his status report, representing that the original trustee, now located in Panama, had agreed to reconstruct the requested records. The individual apparently able to do so, however, was ill and could not presently perform the task. Since no immediate timetable was discernible, Mr. Margolis moved for an indefinite postponement. Mr. Margolis' report, however, for the first time implied that the original records were no longer available. This was inconsistent with his representation at the October 1980 hearing. The court ordered a postponement for a "reasonable length of time to enable petitioners to secure the necessary trust records." J.A. at 42. The court also ordered another status report, due by August 14, 1981.

Mr. Margolis filed his next status report on August 17, 1981. In this report, Mr. Margolis informed the Commissioner and the court that the individual in Panama who was to reconstruct the records had been in the hospital for an extended period. Moreover, there were new difficulties in securing the trust records. The trust company had been totally inactive for some time and did not have any employees who had any connection with events prior to 1978. Thus, Mr. Margolis moved for a further extension, which was granted.

---

1. I.R.C. § 7456(b) (1982) provides, in part:

The Tax Court or any division thereof, upon motion and notice by the Secretary, and upon good cause shown therefor, shall order any foreign corporation, foreign trust or estate, or non-resident alien individual, who has filed a petition with the Tax Court, to produce, or, upon satisfactory proof to the Tax Court or any of its divisions, that the petitioner is unable to produce, to make available to the Secretary, and, in either case, to permit the inspection, copying, or photographing of, such books, records, documents, memoranda, correspondence and other papers, wherever situated, as the Tax Court or any division

thereof, may deem relevant to the proceedings and which are in the possession, custody or control of the petitioner, or of any person directly or indirectly under his control or having control over him or subject to the same common control. If the petitioner fails or refuses to comply with any of the provisions of such order, after reasonable time for compliance has been afforded to him, the Tax Court or any division thereof, upon motion, shall make an order striking out pleadings or parts thereof, or dismissing the proceeding or any part thereof, or rendering a judgment by default against the petitioner.

*1982*

On February 11, 1982, Mr. Margolis moved for leave to withdraw as counsel, substituting Mr. Robert Coffin. On March 22, 1982, the Commissioner moved the Tax Court to set May 21, 1982 as the final date for production of the documents, pursuant to I.R.C. § 7456(b). The Commissioner asserted that a reasonable time had passed since its original motion (one year, ten months). J.A. at 50.

On October 4, 1982, the Tax Court held a hearing on this motion. The court ordered ABC to produce the documents by October 18, 1982. Moreover, the court set the case for trial on May 16, 1983. J.A. at 61.

On October 20, 1982, two days after expiration of the allotted time to produce the documents, the Commissioner received several documents from Mr. Margolis, who was no longer counsel in the case. The Commissioner found none of these documents responsive, and moved for the sanction of dismissal pursuant to I.R.C. § 7456(b) on November 2, 1982. J.A. at 62.

*1983*

On March 16, 1983, the Tax Court held a hearing on the Commissioner's motion. The court allowed the appellants to move for an evidentiary hearing to respond to the government's allegations. The appellants so moved, representing that they proposed to bring many witnesses to the court to prove that the requested documents were lost, thus excusing noncompliance with the motion to produce. Among the witnesses counsel planned to call (if available) were representatives of ABC from Panama, former officers of ABC (including eight named former employees), accountants (including six named individuals), a former custodian of the records, the plaintiff in the California litigation, attorneys in that litigation, Mr. Margolis, and an expert witness (all named). All told, ABC's attorneys listed nineteen potential witnesses. As this motion indicated, many identifiable individ-

uals could have testified regarding the records the government sought. In light of this representation, the Tax Court postponed trial and set an evidentiary hearing for June 6, 1983.

As far as we can tell from the record, that evidentiary hearing did not occur in June of 1983. On June 6, the hearing was continued; on July 18, it was continued again. It was continued yet a third time on October 31, 1983.[2]

*1984*

Finally on February 21, 1984, the Commissioner moved to set a date for the hearing.[3] ABC did not object to this, and the hearing was set for May 7, 1984 in Washington. On May 7, four years after the Commissioner filed the original motion to produce, ABC was not prepared to go forward. It is the outcome of that hearing that is before us in this case.

C. *The May 7, 1984 Hearing and Subsequent Dismissal*

On April 1, 1984, Mr. Margolis fell ill. Soon thereafter, doctors hospitalized him and placed him under heavy medication. It soon became apparent to ABC's attorneys that he would not be able to appear at the evidentiary hearing. The lawyers evidently deemed this development a serious blow to ABC's strategy, for Mr. Margolis was to testify about the existence of the documents on the basis of his intricate knowledge of the trusts. Mr. Margolis requested Mr. Dunnett, a former associate, to represent the trusts at the hearing. Mr. Dunnett was the fifth attorney to represent ABC in this litigation. Mr. Dunnett interviewed Mr. Margolis in an attempt to prepare, but he soon realized that Mr. Margolis' memory and speech were greatly affected by his medication. When this path became blocked, Mr. Dunnett approached all of the attorneys who had previously represented ABC in an attempt to prepare for

---

**2.** In the meantime, Ms. Christine Frahm entered an appearance for ABC.

**3.** On February 22, 1984, Mr. Louis E. Goebel appeared for ABC. Mr. Goebel was the fourth attorney to represent ABC in this action.

the hearing. Soon, it became obvious to all that this too was fruitless.

On April 30, one week prior to the evidentiary hearing, Mr. Dunnett, Mr. Denier—counsel for the Commissioner—and the Tax Court judge held a conference call. During that telephone conversation, the judge expressly stated that he would not continue the May 7 hearing. Mr. Dunnett did not state that Mr. Margolis' presence at the hearing was crucial because of Mr. Margolis' legal talents. Rather, Mr. Margolis was to be only a witness in the hearing. The Tax Court judge had been informed of Mr. Margolis' sickness but stated that he would not grant a continuance. The Tax Court did offer to hold the record open beyond the May 7 hearing date in order to add Mr. Margolis' subsequent testimony. But the court made it clear that the hearing would go forward with or without Mr. Margolis.

On May 7, Mr. Dunnett officially entered his appearance on behalf of ABC, as did Mr. Harlee, a Washington lawyer. Mr. Harlee appeared alone at the hearing and asked for a continuance. The court denied the motion, stating:

I would like the record to show that [sic] the conference call with Mr. Dunnett and Mr. Denier, on April 30th, I made it quite clear that I would not continue this hearing. And that if Mr. Margolis' testimony were needed that I would consider holding the record open after the hearing to take his testimony. At that time no claim was made by Mr. Dunnett that Mr. Margolis's presence was necessary to try the case, except as a witness. He made no claim that Mr. Margolis had to be present at the hearing as an attorney. At that time I made it clear that I expected Mr. Dunnett to provide the Court with an offer of proof as to what evidence Mr. Margolis would testify to or what evidence he would offer. That has not been furnished to the Court.

In the file there are statements by Mr. Coffin as to the witnesses he intends to call at this evidentiary hearing. It would appear to me that if Mr. Coffin is representing to the Court that he knows how to proceed and he knows who to call as witnesses that there is no excuse for Mr. Coffin not appearing to present this matter.

Mrs. Frahm entered her appearance in this case. She hasn't seen fit to withdraw or explain why she isn't ready to proceed with this hearing.

All we have now is another attorney entering his appearance the morning of the hearing asking for a continuance because Counsel isn't prepared.

This discovery motion was filed on us four years ago. And this Court and Respondent have patiently waited for this evidence—this information and it has not been forth coming. The Court will deny Petitioners [sic] motion for continuance.

Appellant's Br.App. ("App.") at 60–61.

On June 15, 1984, the Tax Court entered orders granting the Commissioner's November 12, 1982 motion for sanctions, pursuant to Tax Court Rule 104(c). The cases were dismissed.

Our jurisdiction to review the Tax Court's order is based on 26 U.S.C. § 7482 (1982).

## II. ANALYSIS

As a preliminary matter, we have some difficulty discerning the authority upon which the Tax Court relied in dismissing this case. The Commissioner's motion for sanctions clearly relied on I.R.C. § 7456(b). That section empowers the court to strike pleadings or dismiss a case against a foreign trust that fails to produce relevant records.[4] The orders of dismissal explicitly granted the Commissioner's motion, which was based on § 7456(b). *See* App. at 66–73. Nevertheless, the court dismissed the cases "pursuant to Rule 104(c), Tax Court Rules of Practice and Procedure." *Id.* Tax Court Rule 104(c) gives the court discretion to impose sanctions for failure to obey a discovery order. The court has the discretion to render "[a]n order striking out

4. *See supra* note 1.

pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party." [5] ABC contends that the case was dismissed under the authority of Rule 104(c), while the Commissioner asserts that the basis of the dismissal is I.R.C. § 7456(b).

The orders of dismissal are sufficiently ambiguous that we cannot determine under which authority the Tax Court decided the case. Nevertheless, we affirm the dismissal as proper because both Tax Court Rule 104(c) and I.R.C. § 7456(b) empower the Tax Court to dismiss this particular case. We first review the propriety of the court's refusal to continue the hearing. We then examine the dismissal under Rule 104(c), and under I.R.C. § 7456(b).

### A. *The Denial of a Continuance*

■ The decision to continue consideration of a motion lies in the sole discretion of the trial court, and this court will not set aside a ruling thereon without a clear showing of abuse of that discretion. *Kelberine v. Societe Internationale, Etc.*, 363 F.2d 989 (D.C.Cir.), *cert. denied*, 385 U.S. 989, 87 S.Ct. 595, 17 L.Ed.2d 450 (1966); *Chung Wing Ping v. Kennedy*, 294 F.2d 735, 737 (D.C.Cir.), *cert. denied*, 368 U.S. 938, 82 S.Ct. 380, 7 L.Ed.2d 337 (1961).

■ We find no abuse of discretion in the Tax Court's refusal to continue the May 7 hearing. The court had already continued the hearing twice. Admittedly, Mr. Margolis' sickness was a surprise to everyone. The Tax Court went well beyond its duty in offering, *sua sponte*, to keep the evidentiary record open for Mr. Margolis' testimony after he recovered. The court was not required, however, to wait until ABC felt ready to proceed. ABC had submitted a list of nineteen potential witnesses over a year earlier. Attorneys for ABC presented none of these witnesses at the hearing, although they had over a year to prepare. ABC offered no explanation why none of these witnesses appeared at the hearing. At oral argument before this Court, counsel for ABC conceded that he did not represent to the Tax Court during the conference call of April 30 that Mr. Margolis would be the only witness presented at the May 7 hearing. This explains both the court's willingness to hold the record open for Mr. Margolis and the court's refusal to continue the hearing as to other witnesses. During the April 30 conference call, the Tax Court expressly stated that the May 7 hearing would not be continued. Nevertheless, counsel for ABC chose to appear at the hearing unprepared to call any witnesses.[6] In light of the extended time that had already passed with regard to the documents in question, the Tax Court was fully justified in refusing to continue the evidentiary hearing.

■ Since the hearing went forward and ABC had no evidence to present, ABC failed to show that the documents did not exist. The trial court was then entitled to impose sanctions for the failure to produce those documents.

### B. *Dismissal Under Rule 104(c)*

■ Under Tax Court Rule 104(c), the imposition of sanctions is discretionary with the trial court. We are thus limited

---

5. Tax Court Rule 104(c) (emphasis added) provides, in part:

> If a party ... fails to obey an order made by the Court with respect to the [discovery] provisions ..., the Court *may* make such orders as to the failure as are just, and among others the following:
>
> ....
>    (3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party.

6. It is somewhat misleading to imply that ABC's attorneys were present at the May 7 hearing. ABC apparently hired Mr. Harlee as local counsel for the sole purpose of appearing to move for a continuance. None of the five attorneys substantively involved in this litigation appeared at the May 7 hearing. Three of these five attorneys were apparently still counsel of record for ABC, and thus professionally responsible for the case.

on appeal to a review for abuse of that discretion. *See, e.g., Miller v. Commissioner,* 741 F.2d 198, 199 (8th Cir.1984) (per curiam); *Steinbrecher v. Commissioner,* 712 F.2d 195, 197 (5th Cir.1983) (per curiam); *see also Oelze v. Commissioner,* 723 F.2d 1162, 1163–64 (5th Cir.) (per curiam), *reh'g denied,* 726 F.2d 165 (1983); *Watson v. Commissioner,* 690 F.2d 429, 431 (5th Cir.1982) (Tax Court Rule 123(b)). This is apparently the first case to come to this circuit from the Tax Court in which dismissal was imposed as a sanction for failure to comply with a discovery request. We are guided, however, by decisions in this circuit regarding dismissal by the District Court under Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 37.[7]

The standard for reviewing dismissals under Fed.R.Civ.P. 37 emanates from *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam). *National Hockey League* cautions us to circumscribe our review: "The question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing." *Id.*

Our review is limited not only because of the discretionary nature of discovery sanctions, but because sanctions embody considerations that we must be careful to recognize:

There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to com-

ply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.

But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in absence of such a deterrent.

*Id.* at 642–43, 96 S.Ct. at 2780–81. With these limitations in mind, we turn to the appropriate standard a trial court must follow in dismissing a case for discovery noncompliance.

The sanction of dismissal is severe and should be employed only when absolutely necessary to effectuate the considerations noted above. In *National Hockey League,* the Supreme Court found dismissal appropriate when the plaintiffs had not answered crucial interrogatories in over seventeen months, despite numerous extensions granted "at the eleventh hour." *Id.* at 640, 96 S.Ct. at 2779. The Court upheld the District Court's findings of "flagrant bad faith" on the part of the plaintiffs and counsel's "callous disregard" of their duties. *Id.* at 643, 96 S.Ct. at 2781. In *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087,

---

**7.** Federal Rule of Civil Procedure 37(b)(2) provides, in part:

If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

....

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party ....

We look to our cases reviewing dismissals under Fed.R.Civ.P. 37 because that rule is the exclusive remedy for noncompliance with discovery orders. *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 207, 78 S.Ct. 1087, 1093, 2 L.Ed.2d 1255 (1958). It is thus most analogous to Tax Court Rule 104. Indeed, Rule 104 was adopted in its entirety from Fed.R.Civ.P. 37. *See* Tax Ct.R. 104 reporter's note, 60 T.C. 1123–25 (1973); *Fox v. Commissioner,* 718 F.2d 251, 254–55 (7th Cir.1983).

2 L.Ed.2d 1255 (1958), the Court vacated the dismissal of a case in which the plaintiff had refused to comply with a discovery order to avoid violating another country's criminal laws. The Court held dismissal inappropriate "when it has been established that failure to comply has been due to inability, *and not to willfulness, bad faith, or any fault of the petitioner.*" *Id.* at 212, 78 S.Ct. at 1096 (emphasis added).

We last reviewed this circuit's standard for dismissal under Fed.R.Civ.P. 37 in *Weisberg v. Webster,* 749 F.2d 864 (D.C.Cir. 1984). In that case, the trial court dismissed the plaintiff's action for failure to respond to the defendant's interrogatories. This court affirmed, employing the *Societe Internationale* standard of " 'willfulness, bad faith, or [some] fault.' " *Id.* at 871 (quoting *Societe Internationale,* 357 U.S. at 212, 78 S.Ct. at 1096). Other cases in this circuit have followed a similar standard. *See Dellums v. Powell,* 566 F.2d 231, 235 (D.C.Cir.1977) ("some element of willfulness or conscious disregard is still required to justify a sanction of dismissal"); *Von der Heydt v. Kennedy,* 299 F.2d 459, 461–62 (D.C.Cir.), *cert. denied,* 370 U.S. 916, 82 S.Ct. 1554, 8 L.Ed.2d 498 (1962) (bad faith and willful refusal). Taken together, these cases require some finding of culpability on the part of the non-complying party amounting to willfulness or bad faith to justify dismissal.

For the reasons enumerated above in our discussion of the Tax Court's refusal to continue the hearing, we find that this case was appropriately dismissed. The appellants were fairly warned that they were expected to appear on May 7 and present witnesses, other than Mr. Margolis, who could testify as to the existence of the documents. ABC has not even attempted to explain why none of these individuals was presented. Rather, ABC deliberately chose to move for a third continuance, even after the Tax Court indicated that such a motion would be denied. ABC's refusal to participate could be no more willful. ABC did not even send attorneys who were familiar with the litigation to the hearing.

ABC presented no new facts at the hearing. It apparently held the unrealistic hope that the Tax Court would change its mind for no reason at all. Given the torrid history of this litigation, the inconsistent representations by ABC, the unacceptable delay prior to the May 7 hearing, and the unexplained failure to present evidence at the hearing, we find that ABC's motion to continue the hearing was made in bad faith.

The facts in this case are strikingly similar to those found sufficient to warrant dismissal in *National Hockey League.* ABC's attorneys have exhibited a "callous disregard" of their professional obligation to respond promptly and accurately to an opponent's discovery request. ABC has been granted numerous extensions "at the eleventh hour" and still, after four years of litigation, the status of the documents has not been satisfactorily explained. We find this conduct unacceptable, as did the Tax Court. Accordingly, we find no abuse of discretion.

ABC argues that it falls within the rule of *Societe Internationale.* In that case, however, the Supreme Court excused failure to comply because of inability, not "willfulness, bad faith, or ... fault." 357 U.S. at 212, 78 S.Ct. at 1096. ABC argues that its failure to comply was due to inability because Mr. Margolis was unexpectedly hospitalized. But ABC never asserted that Mr. Margolis was the only witness; in fact, it represented quite the contrary in its March 1983 motion for an evidentiary hearing. ABC's failure to comply was in no way due to Mr. Margolis' illness. ABC's failure to comply was solely the result of its attorneys' unexplained decision not to call any other witnesses at the hearing. If ABC's case rested entirely on Mr. Margolis' testimony, it should have told that to the Tax Court. It is too late in the day to make that claim now.

### C. *I.R.C. § 7456(b)*

Since the ruling below is unclear, we also review its propriety under I.R.C. § 7456(b). We find that the Tax Court's order was valid on this theory as well.

Section 7456(b) is clearly designed to remedy the special discovery problems that can arise in litigation with foreign taxpayers. All of the language in § 7456(b) regarding orders is directory. Once the court has found good cause for the production of documents, the court *must* order production of the documents. After a reasonable time for compliance, the court *must* order one of the three sanctions listed in § 7456(b). Each of these sanctions focuses on full or partial dismissal. Under this section, then, the court's discretion is limited to finding good cause, and should the taxpayer not comply with an order to produce, choosing between the three available sanctions: striking pleadings, dismissing the proceeding, or rendering a default judgment.

The parties have not cited, and our research has not revealed, any cases in which the Tax Court has resorted to § 7456(b). The section was added to the tax code when the Internal Revenue Code of 1954 was enacted. The legislative history of the section, however, provides us with no insight into the more subtle aspects of the section. Both the House and Senate Reports on the 1954 Code merely repeat the essential provisions of § 7456(b). H.R.Rep. No. 1337, 83d Cong., 2d Sess. A433 (1954); S.Rep. No. 1622, 83d Cong., 2d Sess. 613 (1954).

██ Since the language of § 7456(b) is mandatory, our review is limited to a determination whether the statutory prerequisites are satisfied. There is no dispute that the Commissioner had good cause for seeking the documents. Moreover, ABC does not claim that a reasonable time had not yet passed or that the underlying discovery motion was somehow invalid. Thus, the Tax Court discretion was limited to a choice between the three alternatives available under § 7456(b). The only substantive issues in this lawsuit are whether the trusts were doing business in the United States or whether the trusts were present in the United States when they won the judgment in the California litigation. The Commissioner sought the documents to prove pre-

cisely these points. The only sensible sanction, then, was dismissal. A default judgment is inapplicable to this case, and striking out portions of the pleadings would leave ABC with no case, because the relevant portions of the pleadings would be those denying the Commissioner's theories. We thus find the order of dismissal valid under I.R.C. § 7456(b).

## CONCLUSION

This litigation presents a prime example of how attorneys should *not* operate. By the time of the May 7 hearing, *five* attorneys had been substantively involved in the case, and only one of them was ill, yet none of these attorneys appeared at the hearing. ABC's attorneys had submitted a list of nineteen potential witnesses over a year earlier, yet none of those witnesses was present at the hearing. While we recognize the difficulty of persuading individuals residing in foreign countries to be witnesses in a lawsuit here, many of those listed by ABC's attorneys as potential witnesses reside in the United States. ABC's attorneys have offered no explanation as to why these individuals did not testify. Moreover, the attorneys did not warn the Tax Court of changed circumstances, if any, that might have justified postponing a hearing as to these other witnesses.

The sanction of dismissal is a harsh one that operates against ABC, rather than against its attorneys. We do not review this case lightly, since we are well aware of the tax liability at stake. Nevertheless, if we are to enforce the mandate of *National Hockey League*, we must penalize the unacceptable delay in this case.

Accordingly, the orders of the Tax Court dismissing these actions are affirmed.

*It is so ordered.*