Nellie M. PERKINSON, Plaintiff,

v.

HOULIHAN'S/D.C., INC., Defendant.

Civ. A. No. 84–2038.

United States District Court,
District of Columbia.

Dec. 9, 1985.

Thomas W. Kirby, Wiley & Rein, Washington, D.C., for plaintiff.

James C. Gregg, D'Ana E. Johnson, Stephen G. Huggard, Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

On April 22, 1984, Nellie M. Perkinson, an elderly lady, accompanied by members of her family, had lunch at Houlihan's Old Place Restaurant in Washington, D.C. The plaintiff and her party entered the restaurant at the street level and were then directed to, and seated for lunch, on the second level of the restaurant. The second level was separated from the lower level by a few wood surface steps. After lunch, plaintiff and her party left the table and proceeded back to the steps on their way to the lower level and the exit. While attempting to descend the steps, plaintiff slipped and fell. The fall broke her leg and has substantially incapacited her.

Following this accident plaintiff and members of her family brought this suit charging essentially that her fall was caused by defendant's negligent failure to apply a non-slip surface to and adequately illuminate the steps. The restaurant defended on the ground that the steps were not slippery or inadequately illuminated and that, in any event, plaintiff's inatten-

tion and contributory negligence caused her to miss the top step and her resulting fall and injury.

After stormy pretrial proceedings, a first trial in February, 1985, resulted in a defendant's verdict. Thereafter, plaintiff moved for, and the Court granted, a new trial because of, among other things, defendant's pretrial "discovery evasion." Plaintiff's parallel motion for sanctions remained under advisement pending the new trial.

The second trial has followed the course of the first. Pretrial discovery required extraordinary intervention by Magistrate Dwyer and the Court. The pretrial proceedings reached a climax when this Court imposed upon defendant a conditional fine of $5,000 per day in order to secure the appearance of its local general manager at an eve-of-trial deposition. Although the vigorous judicial intervention provided plaintiff with the deposition she sought, the second trial also ended in a verdict for defendant.

The matter is now before the Court on plaintiff's continuing motions for sanctions on account of the disruptive tactics of defendant and its counsel, and plaintiff's motion for a third trial. The sanctions motions have been the subject of extensive briefing and argument before Magistrate Dwyer and this Court, and the parties have thoroughly briefed the motion for a third trial. There is also before the Court a comprehensive Opinion and Recommendation by Magistrate Dwyer. The Magistrate recommended finding that the defendant and its counsel were guilty of serious discovery abuse partaking of contempt. As a sanction she recommended that the Court enter default judgment against defendant and its counsel, and also assess costs, including plaintiff's attorney's fees against them. As an alternative to a default, the Magistrate recommended giving plaintiff a new trial.

Full consideration of the Magistrate's recommendation, the briefs and arguments of counsel, and the entire record establish that the conduct of defendant and its counsel is sanctionable and that defendant and its counsel must pay plaintiff's costs, including reasonable attorney's fees. However, the two jury verdicts for defendant demonstrate that plaintiff's claim on the merits cannot and should not prevail by default or otherwise.

Quite apart from any information which would have been developed by more business-like discovery responses, it is apparent from the two trials that there was more than enough evidence of contributory negligence as the proximate cause of the accident to justify the two verdicts for defendant. A default judgment in the teeth of these verdicts would be a miscarriage of justice. Plaintiff has failed to demonstrate that a third trial could produce a different result, or that assessment of costs, including attorney's fees, is an insufficient sanction from the perspective of plaintiff.

## II.

### A.

The Magistrate's September 11, 1985 Opinion and Recommendation ("Magistrate's Recommendation") recites that it was based upon "all motions for sanctions and supporting documents (including filings on February 1, 5, and 6, 1985; March 1, 8, and 20, 1985; July 1, 9, 24, and 29, 1985; and August 19, 1985) as well as the entire record herein and oral argument heard by [the Magistrate] on July 10, 1985, and August 1, 1985...." *Id.* at 679.[1] The Magistrate made the following findings of fact with regard to the discovery phases of both trials:

"1. On December 4, 1984, Judge Oberdorfer granted plaintiff's motion for sanctions and required that the defendant make available by December 14 and 19, 1985 [sic] respectively, its restaurant General Manag-

---

1. A copy of her opinion and recommendation are attached as Appendix A to this Memoran-    dum.

er and Assistant Manager. The Court imposed the cost of transporting the witnesses to Washington, D.C. for deposition on defendant. The Court also denied defendant's cross motion for sanctions.

"2. The December 4, 1984, Order also required defendant to answer interrogatories 3 and 4 and document request 2 [from plaintiff's first set of discovery requests, served July 5, 1984] by December 14, 1985 [sic].

"3. On December 5, 1984, defendant purportedly provided the information sought in interrogatory 3 and document request 2.[1] [The Magistrate's footnotes are reproduced *infra* at 670–671.]

"4. On December 12, 1984, defendant moved to reschedule the deposition of Mr. Mignona, the restaurant's General Manager. The Court allowed defendant to delay the deposition until December 19, 1984, when discovery was to close.

"5. During the December 18, 1984, deposition of the defendant restaurant's Assistant Manager, Ms. Weil, two sets of documents responsive to document request 2 and interrogatory 3 were 'discovered' through her testimony. These reports included Worker's Compensation claims for slips and falls and reports of the restaurant's 'Safety and Energy' committee. The defendant claims the failure to produce was due to counsel's inadvertence and, subsequently, produced the responsive documents.

"6. Due to the delay in producing the responsive material, plaintiff was unable to use these reports in the depositions of Mr. Mignona and Ms. Weil.

"7. Mr. Mignona, in deposition testimony, revealed that while he was General Manager he had kept a file which contained information relevant to plaintiff's document requests 5 and 6.[2] He further indicated that he had not been asked to review his files for pertinent material subject to plaintiff's discovery requests. (Plaintiff's Motion to Enforce Orders and Impose Sanctions, February 1, 1985, p. 12–13.) Defendant made

no excuse nor offered any explanation for this failure to comply with discovery.

"8. During the February 12, 1985, Pretrial Conference, Judge Oberdorfer precluded two of defendant's witnesses from testifying at trial and postponed ruling on two other failures by defendant (regarding the Worker's Compensation and Safety reports and the Mignona file memoranda). The Judge, further, denied defendant's counter-motion for sanctions.

"9. During the trial, February 19 and 20, 1985, the defendant restaurant's General Manager, in contravention of the 'no witnesses' ruling by the Court, listened to the first day's proceeding through the crack in the courtroom door. Judge Oberdorfer permitted counsel to investigate this misconduct, before the jury, through testimony of the witnesses.

"10. The jury returned a verdict for defendant, against plaintiff, on February 20, 1985.

"11. On April 25, 1985, Judge Oberdorfer issued an Order granting plaintiff a new trial, due to to the 'discovery evasion' committed by defendant's counsel and the prejudice it engendered. In addition, he expressly allowed that other specific sanctions may be invoked.

"12. On May 17, 1985, plaintiff moved to compel production of all discovery material that had been wrongfully withheld.

"13. On June 5, 1985, Magistrate Dwyer ordered the production of all discovery sought under the May 17 motion. Defendant complied without opposition.

"14. Defendant filed supplemental responses and provided plaintiff's counsel access to numerous documents. Defendant averred, however, that the materials in Mr. Mignona's file could not be located and had, apparently, been destroyed after Mr. Mignona left the restaurant, and after plaintiff's document requests.

"15. On July 10, 1985, the Magistrate conducted a motions hearing and, denying defendant's request for a protective order, directed defendant to respond to plaintiff's 'follow-up' discovery. The Magistrate fur-

ther ordered that, if plaintiff desired, the depositions of Mr. Mignona and Ms. Weil be reconvened, at defendant's expense.

"16. At the July 10, 1985, hearing, plaintiff expressed a desire to depose the present General Manager of defendant restaurant, Ms. Hoffman, if Mr. Mignona's testimony indicated that the missing files existed at his departure from the restaurant. The defendant was directed to cooperate with such a deposition if it were necessary.

"17. Plaintiff's attempts to depose the present General Manager on July 26, 1985, were unsuccessful because defendant objected to the timeliness of the plaintiff's notice, although counsel had informally agreed to a deposition of Ms. Hoffman.

"18. Magistrate Dwyer conducted a hearing on the pending sanctions motions on August 1, 1985. During the hearing, plaintiff's counsel discussed the difficulties he had encountered in attempting to depose the General Manager.

"19. On August 7, 1985, Magistrate Dwyer entered an Order requiring defendant to make Ms. Hoffman available for deposition by August 16, 1985, and required plaintiff to provide not less than 24 hours notice of a scheduled deposition.

"20. On August 13, 1985, Magistrate Dwyer conducted a conference call, at the request of counsel, in which it was learned that Ms. Hoffman was on vacation for the remainder of the week, thus precluding her deposition required by the August 7, 1985 Order.

"21. On August 14, 1985, Magistrate Dwyer ordered that defendant make Ms. Hoffman physically available in Washington, D.C. for deposition before August 16, 1985, and required her to remain if she were subpoenaed for the upcoming trial on August 19, 1985. Defendant was to bear the expenses of her return to this jurisdiction.

"22. After a hearing on August 16, 1985, appealing the Magistrate's August 14, 1985, Order, Judge Oberdorfer explicitly found defendant to be in violation of the Magistrate's Order of August 7, 1985, and affirmed her ruling of August 14, 1985.

"23. Defendant's counsel represented to the Court on August 16, 1985, that she did not know of Ms. Hoffman's whereabouts.

"24. Judge Oberdorfer, after a further hearing to show cause why defendant should not be found in contempt, entered an Order ruling that defendant was in contempt of court and assessing a civil contempt penalty in the amount of $5,000 a day for each day Ms. Hoffman failed to appear for deposition.

"25. On August 12, 1985, the date on which defendant received the notice of Ms. Hoffman's deposition, she had not yet left the area for her vacation although she was not at the restaurant itself.

"26. Ms. Hoffman had left the telephone number at which she could be reached while on vacation, according to company policy, prior to her departure.

"27. Defendant restaurant's acting general manager, Mr. Greg Smith, telephoned Ms. Hoffman, at the place where she was vacationing and spoke with her. This occurred prior to the date of her deposition and prior to the hearing before Judge Oberdorfer on August 16, 1985.

"28. After the contempt Order on August 16, 1985, counsel advised the defendant of the ruling, and Ms. Hoffman was again called at her vacation location.

"29. On August 17, 1985, Ms. Hoffman, with counsel, appeared for deposition. She refused personal service of a trial subpoena [on the advice of defendant's counsel] but . . . did testify at the second trial on August 19, 1985.

"30. The jury returned a verdict for defendant, against plaintiff, on August 21, 1985."

The Magistrate supplemented her findings of fact with the following footnotes, in which she quoted certain of plaintiff's interrogatories and document requests:

[1] Interrogatory 3: For the period January 1, 1982, to date, identify each fall by a patron or employee of Houlihan's ob-

served by or reported to any employee of Houlihan's, including the name, address, and telephone number of the victim of the fall, the date of the fall, and a summary of the circumstances of falls.

Document request 2: Each document referring or relating to any other fall in Houlihan's over the period January 1, 1982, to date.

[2] Document Request No. 5: Each document referring or relating to the risk of slips and/or falls on stairs or on uncarpeted floors.

Document Request No. 6: Each document constituting or referring or relating to instructions or policies for Houlihan's employees relating to avoiding or preventing slips and falls.

Magistrate's Recommendation at 679–82.

Based upon her supervision of the discovery process and her consideration of the parties' sanctions pleadings, the Magistrate concluded that the combined effect of the events detailed in her findings of fact was to "strain the credibility of defense counsels' repeated assertions that they [were] acting in good faith." *Id.* at 682. She further stated that:

> Notwithstanding the characterizations offered by defense counsel, there is ample evidence that the defendant deliberately failed to comply with discovery requests; has been unnecessarily obstructive in providing pertinent documents and witnesses for depositions; has failed to obey Court Orders; and, has failed to maintain files (particularly those kept by the General Manager of Houlihan's/D.C.) potentially relevant to this litigation. It is clear from the record that defendant's counsel has, with regularity, exceeded the bounds of zealous representation and ignored the obligations implicit in the Federal Rules of Civil Procedure (Rules) to cooperate, in good faith, during the discovery process. *See,* Fed.R.Civ.Pro. 11.

Magistrate's Recommendation at 682.

The Magistrate concluded that the pattern of discovery abuses was sanctionable and justified entry of a default judgment against defendant pursuant to Rule 37(b)(2)(C). *Id.* at 685. If a lesser sanction were found to be appropriate, the Magistrate recommended that plaintiff's motion for a new trial be granted. *Ibid.* She also recommended that defendant and defense counsel be required to pay reasonable costs and expenses, including attorney's fees, incurred by plaintiff in litigating the first and second trials, as well as those expenses necessitated by a third trial if a third trial was granted by this Court. *Id.* at 686. The Magistrate further concluded that:

> [i]t is difficult to distinguish whether the failure to comply resulted from wrongdoing by the defendant or the defendant's counsel. Most likely, the combination of abusive conduct by both led to most of the discovery problems before the Court. Therefore we believe it appropriate that sanctions be levied against both the party defendant and defendant's counsel.

Magistrate's Recommendation at 685 n. 11, *citing Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980).

### B.

Plaintiff's Motion for New Trial, Default and Other Relief ("Motion for New Trial") is, in effect, a motion for affirmance of the Magistrate's findings, conclusions and recommendations. Plaintiff vigorously contends that defendant's acts in obstruction of discovery (before both the first and the second trials) violated the Federal Rules of Civil Procedure and the direct orders of the Court and the Magistrate. Plaintiff further contends that the Magistrate correctly concluded that these actions so prejudiced plaintiff's presentation of her case that the jury verdict in favor of defendant must be set aside. Accordingly, plaintiff moves that:

(1) the August 21, 1985 verdict for defendant Houlihan's/D.C., Inc. be set aside, (2) that a judgment of liability be entered against defendant by default, (3) that damages be assessed on the record

of the first trial, and (4) that defendant be assessed all fees and costs incurred by plaintiff and her counsel to date. Motion for New Trial at 1. In support of this motion, plaintiff cites the following specific actions taken by defense counsel, defendant and the Court.

(a) Defendant failed to inform plaintiff prior to the first trial that deposition testimony of John Mignona (defendant's general manager for a period of time after the incident which gave rise to this lawsuit) was incorrect. This failure to supplement deposition answers resulted in the surprise of plaintiff's counsel that was prejudicial to plaintiff's case.

(b) Defendant frequently resisted discovery requests, often producing documents and witnesses only after vigorous intervention by the Court or the Magistrate. For example, certain documents belatedly produced *after* the first trial had been conducted were within the scope of court orders compelling production *before* the first trial. Indeed, plaintiff claims and the record confirms that certain documents were never produced. Most important, testimony presented at the second trial indicated that defendant's present general manager discarded or destroyed documents that were responsive to certain of plaintiff's discovery requests (at a time *after* plaintiff's discovery requests were served). *See supra* at 669, ¶ 14 of Magistrate's Findings of Fact.

(c) Plaintiff claims that defendant's belated production of its General Manager, Janet Hoffman, for deposition further prejudiced plaintiff's trial preparation and presentation. *See supra* at 669–670.

(d) Plaintiff further cites defendant's and defense counsels' apparent acts of misrepresentation during the chain of events preceding Hoffman's deposition on August 17, 1985. Plaintiff also notes that defense counsel instructed Hoffman at the August 17 deposition not to accept service of a subpoena requiring her to appear to testify at trial. Were it not for an automobile accident involving plaintiff's family (which delayed the start of trial from August 19 until August 20, 1985) it is apparent that Hoffman would not have been available to testify at trial.

(e) Plaintiff requested adverse inference instructions based upon defendant's acts of discovery obstruction and misconduct. The Court refused the adverse inference instructions request. Plaintiff subsequently moved for default and the Court declined to rule on plaintiff's default motion at that time, instead holding the motion under advisement pending consideration of the other sanctions issues.

(f) John Mignona, defendant's former general manager, testified at the second trial and *again* contradicted deposition testimony he had previously offered. In particular, Mignona testified on deposition that "Glitsa finish" (coating the stairs on which plaintiff fell) had no special nonslip surface propensities. At trial he testified that he had always understood that "Glitsa finish" created a nonslip surface and "explained" his earlier deposition testimony. He claimed to have misunderstood the deposition question about "Glitsa." Plaintiff suggests that this trial testimony was a knowing falsehood, and that Mignona could not, as he claimed at trial, have "misunderstood" the deposition questions. Plaintiff argues that such allegedly knowingly false testimony (1) is chargeable to defendant because of the witness' close ties to defendant,[2] and (2) again unfairly surprised plaintiff in a fashion similar to the first trial. Plaintiff finally asserts that even if Mignona's testimony was not perjurous, defendant failed (as at the first trial) to supplement deposition responses as required by Rule 26(e) to prevent unfair surprise at trial.

Plaintiff contends, much as the Magistrate concluded, that the combined effect of all of these events and actions is to render

---

**2.** Although Mignona no longer works at Houlihan's/D.C., Inc., he testified that he is employed as general manager of Devon's Bar and Grill, which, like Houlihan's/D.C., Inc., is owned by Gilbert/Robinson, Inc.

incredible defendant's assertions that (1) documents which were destroyed or discarded were lost through inadvertence rather than actions taken in bad faith, and (2) other discovery obstruction was merely the result of good faith differences in interpretation of court orders and discovery requests. Plaintiff concludes that it was unfair and prejudicial to plaintiff that defendant was allowed "to present its case without adverse consequences (other than the early witness preclusion orders) [*see supra* at 669 ¶ 8 of Magistrate's Findings of Fact] from its persistent falsehoods and concealment of relevant evidence and witnesses." Motion for New Trial at 10.

## C.

In response to plaintiff's various sanctions motions, defendant generally asserts that it has throughout the case acted in "good faith" in an attempt to cooperate with plaintiff's discovery demands. Defendant contends that it has been adequately sanctioned for any discovery abuses that might have occurred by Court orders that (1) granted plaintiff a second trial; (2) precluded two of defendant's witnesses from testifying;[3] (3) denied defendant's assertions of attorney-client and work-product privileges with respect to certain of plaintiff's discovery requests; and (4) required defendant to bear the expense of Mignona's second deposition. *See generally* Defendant's Memorandum of Law in Opposition to Plaintiff's Various Sanctions Motions (July 31, 1985).

**3.** *See supra* at 669, ¶ 8 of Magistrate's Findings of Fact.

**4.** *See* Notes of Advisory Committee on Rules regarding the 1970 Amendments to Subdivision (e) of Rule 26: "The duty will normally be enforced, in those limited instances where it is imposed, through sanctions imposed by the trial court, including exclusion of evidence, continuance, or other action, as the court may deem appropriate."

**5.** Fed.R.Civ.P. 26 provides in part:
(e) *Supplementation of Responses.* A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his

## III.

The Magistrate has correctly found that defendant and defense counsel violated the Federal Rules and direct Court orders. First, after the February trial, this Court ruled that "[d]efendant's failure to supplement Mignona's deposition testimony, *see* Fed.R.Civ.P. 26(e), effectively deprived plaintiff of the ability to explore this issue fully." Memorandum and Order Granting New Trial at 2, (April 25, 1985) ("April 25 Memorandum"). Given this explicit admonition, defendant's and defense counsel's actions in regard to Mignona's second trial testimony (which again contradicted earlier deposition testimony) are plainly sanctionable.[4] Defendant sought (and was denied) the Court's permission to have Mignona sit at the counsel table as corporate representative; Mignona also testified that he was at the time of the second trial employed as general manager of Devon's Bar and Grill —which, like Houlihan's D.C./Inc., is owned by Gilbert/Robinson, Inc. Under these circumstances, Mignona's actions are chargeable to defendant. Fed.R.Civ.P. 26(e)[5] required defendant to supplement Mignona's deposition testimony if that deposition testimony was inaccurate or incomplete. This duty was sharpened by the April 25 Memorandum. *At best*, defense counsel was grossly negligent in failing once again to prevent "surprise testimony" that in the first trial contributed to confusing the evidence presented to the jury. The violation of 26(e) supports imposition of appropriate sanctions.

response to include information therafter acquired, except as follows:
....
(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.
(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

Second, defendant destroyed documents after they were the subject of a discovery request. Defendant originally possessed a file (the "Mignona File") of documents responsive to discovery requests served by plaintiffs on July 5, 1984. A December 4, 1984 Court Order compelled defendant to respond to certain of these discovery requests, and on December 5, 1984 defendant purportedly provided the information sought. At the December 19, 1984 deposition of Mignona, he advised plaintiff (for the first time) of the existence of the Mignona file. Furthermore, Mignona indicated on December 19 that defense counsel had not instructed him to review his files for materials responsive to plaintiff's discovery requests. As the Magistrate's Recommendation recites (and defendant does not contest in its opposition to the Magistrate's Recommendation), "[d]efendant made no excuse nor offered any explanation for this failure to comply with discovery." Magistrate's Recommendation at 680.

Rule 26(g) (emphasis added) of the Federal Rules of Civil Procedure states in part that:

> The signature of an attorney or party constitutes a certification by him that he has read the request, response, or objection, and that to the best of his knowledge, information and belief *formed after reasonable inquiry* it is (1) consistent with these rules and warranted by existing law....

Rule 26(g) further authorizes sanctions for Rule 26 violations. *See also* Fed.R.Civ.P. 11. Defense counsel's responses to plaintiff's July 5, 1984 discovery requests, even interpreted in the most generous light, violated Rule 26(g) and Rule 11. Defense counsel failed to ask Mignona to search his files for materials responsive to plaintiff's discovery requests before defendant purported to answer those requests. Thus, at best, defendant violated the duties imposed by Rules 26(g) and 11 (as well as the Court's December 4, 1984 Order compelling answers to plaintiff's discovery requests) to conduct "reasonable inquiry" before responding to discovery requests. This particular violation proved especially damaging as (again, interpreting the record in the light most favorable to defendant) the failure to discover and protect these documents after the July 5, 1984 request, resulted in "inadvertent" destruction of them by Mignona's successor.

Third, the defendant and its counsel impeded the deposition of Ms. Hoffman, the restaurant's present general manager, to the point where a civil contempt order was required to effect her presence, and attempted to obstruct service of a trial subpoena tendered by plaintiff at the deposition. These actions were sanctionable under Rule 37(b).[6] Defendant acted in contempt of Court when it failed to make Hoffman available for a deposition by August 16, 1985 as required by the Magistrate's August 7 and August 14 Orders. *See Perkinson v. Houlihan's/D.C., Inc.*, 107 F.R.D. 286 (D.D.C.1985). In opposing the contempt citation, defense counsel represented to the Court that Hoffman was unavailable because she had left for vacation before defendant was able to act on plaintiff's August 12, 1985 Notice of Deposition. Hoffman's deposition testimony, however, revealed that she had not left until approximately 8:00 P.M. on the 12th and before that time could have been reached at her home telephone number (the telephone number was known by defendant). Indeed, her deposition testimony and the parties' subsequent pleadings show that defendant knew (and defense counsel knew or with reasonable inquiry of defendant should have discovered) the Long Island telephone number where Hoffman

---

**6.** Fed.R.Civ.P. 37(b) (emphasis added) provides in part that:

> In lieu of any of the foregoing orders *or in addition* thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

could be reached.[7] More significantly, the record indicates that defendant had this information *prior* to the August 16 status call at which defense counsel represented to the Court that she had no idea as to where in New York Hoffman was vacationing or how she might be located. Defense counsel stated "We have not been able to find out if it's the city. I understand she's in New York, period, the State. We don't know specifically where. She did not leave a forwarding address other than—or an address other than that she was going to be in New York." Once again, if defense counsel did not consciously misrepresent material facts to the Court, she made these significant representations without "reasonable inquiry" as to their accuracy.

In addition, defendant's August 29, 1985 Opposition stated that "Ms. Hoffmann [sic] appeared for her deposition on August 17, 1985. At that time, plaintiff attempted but failed to serve Ms. Hoffmann [sic] with a subpoena. Under the strict terms of the August 15, 1985 Order, then, she was free to leave the District of Columbia." *Id.* at 3. This is an incomplete description of what transpired, in violation of Rule 11. The fact is that Hoffman was not served with the trial subpoena *because* defense counsel explicitly instructed her "not to accept the subpoena." *See* Plaintiff's August 19 Sanctions Motion at 2–3 (supported by a transcript of the deposition). Defense counsel gave Hoffman these instructions despite the Magistrate's August 14, 1985 Order that "Ms. Hoffman be physically available in D.C. for a deposition before the close of business August 16, 1985 [and that] *[i]f she is subpoenaed for trial purposes, she is not to depart the D.C. area until she has fulfilled her obligations under such a*

*subpoena." Id.* (emphasis added). Defense counsel's actions thus demonstrate a clear intent to frustrate the Magistrate's Order.[8]

Finally, defendant's September 10, 1985 Opposition to Plaintiff's Motion for New Trial, Default, and Other Relief, asserts that plaintiff "has been permitted to review and obtain copies of every document from every one of the fifty-seven Houlihan's restaurants, its parent company, its insurance company, and its attorneys, without regard to privilege, that was even tangentially related to the issues at this trial." *Id.* at 5. This representation disregards the discarded "Mignona file," which presumably contained information *more* than "tangentially related to the issues at this trial". The Mignona file was *not* produced for plaintiff's review. Defendant's September 10 assertion constitutes a serious mischaracterization, again in violation of Rule 11.

■ Defendant's and defense counsel's misrepresentations and acts of discovery obstruction evidence continuing serious disregard for the authority of the Court and the Federal Rules of Civil Procedure. It is an understatement to conclude that defense counsel was grossly negligent. The sheer number of the abuses contradict defense counsel's claims to have acted in good faith throughout this litigation.

The Magistrate's Recommendation aptly summarizes the sanctionable abuses:

Notwithstanding the characterizations offered by defense counsel, there is ample evidence that the defendant deliberately failed to comply with discovery requests; has been unnecessarily obstructive in providing pertinent documents

---

7. Defendant's August 29, 1985 Memorandum of Points and Authorities in Support of Defendant's Opposition to Plaintiff's August 19, 1985 Sanctions Motion ("Defendant's August 29 Opposition") (emphasis added) states at 1 that on August 12, 1985:

Defense counsel telephoned the restaurant and was told that Mr. Greg Smith was the acting general manager.

Mr. Smith was asked to contact Ms. Hoffman. According to her testimony he did so [on August 13] and *she told him to report back*

*that he had left a message, which report he gave.*

Thus defendant's own pleadings and testimony reveal actions by defendant which obstructed discovery and frustrated the Magistrate's Orders.

8. The Magistrate's order was affirmed by this Court on August 16, 1985, and unsuccessfully challenged by the defendant in the Court of Appeals before the August 17, 1985 deposition.

and witnesses for depositions; has failed to obey Court orders; and has failed to maintain files (particularly those kept by the General Manager of Houlihan's D.C.) potentially relevant to this litigation. It is clear from the record that defendant's counsel has, with regularity, exceeded the bounds of zealous representation and ignored the obligations implicit in the Federal Rules of Civil Procedure (Rules) to cooperate, in good faith, during the discovery process. *See* Fed.R.Civ.Pro. 11.

Magistrate's Recommendation at 682.

■ Severe sanctions (including dismissal or default) are appropriate against litigants who abuse the discovery process. As was recently recognized by our Court of Appeals:

> Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism. [footnote omitted]

*Weisberg v. Webster,* 749 F.2d 864, 872 (D.C.Cir.1984), *quoting G.K. Properties v. Redevelopment Agency of the City of San Jose,* 577 F.2d 645, 647 (9th Cir.1978); *see also National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747; *reh'g denied* 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158 (1976); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980); *Aruba Bonaire v. Commissioner of Internal Revenue,* 777 F.2d 38, 44 (D.C.Cir.1985); *In Re Sealed Case,* 754 F.2d 395, 401 n. 5 (D.C. Cir.1985).

This Court conducted the two trials and received contemporaneous reports regarding the discovery disputes. *See, e.g., Per-*

*kinson v. Houlihan's/D.C., Inc.,* 107 F.R.D. 286 (D.D.C.1985). The Magistrate's findings of fact, uncontroverted by defendant in its opposition to her recommendation, accurately summarize the record of the events leading to the second trial. The Magistrate's findings of fact are fully supported by the record. Substantial sanctions should be imposed against defendant and defense counsel as authorized by Rules 11, 26(g), and 37(b) and *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 448 (1979) ("[I]n narrowly defined circumstances, federal courts have inherent power to assess attorney's fees against counsel.... If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes." *Id.* at 765–66, 100 S.Ct. at 2463–64.)

### IV.

■ The Federal Rules require that sanctions be designed so as to compensate the wronged party for the extra effort it was forced to expend because of the wrongdoer's obstructive behavior. Perhaps more significantly, our Court of Appeals has also indicated that sanctions awards should deter similar conduct in the future. *See Weisberg, supra,* 749 F.2d at 872, *In re Sealed Case, supra,* 754 F.2d at 401 n. 5; *See also Hamilton v. Ford Motor Co.,* 636 F.2d 745, 747 (D.C.Cir.1980) ("The principal purpose of Rule 37(b) is punitive, not compensatory.")

■ After carefully considering both of these guiding principles, the Court finds that defendant and defense counsel must pay plaintiff the amount of her costs, including attorney's fees, from September 24, 1984 [9] through the date of this Memorandum. Most pre-first-trial proceedings after this date and (as clarified by the reasons stated in the April 25 Memoran-

---

**9.** On September 24, 1984, defendant filed responses to plaintiff's July 5, 1984 document requests, asserting in the process that no documents existed that were responsive to certain of plaintiff's requests. Such representation was

made without inquiry of Mignona, then General Manager of the restaurant, and was a critical step toward the eventual destruction of the Mignona file.

dum) virtually all of the proceedings leading up to and culminating in the second trial were necessitated by defendant's and defense counsel's obstructive, uncooperative behavior.

Such a sanctions award should compensate plaintiff for much of the time and energy she was forced to expend as a result of defendant's and defense counsel's abuses. Perhaps more importantly, it should provide notice to defendant, defense counsel and other litigants that the courts of this jurisdiction will not permit the abusive practices that pervaded this litigation. Accordingly, an accompanying order will require defendant and its counsel to pay, in equal shares, plaintiff's costs, including attorney's fees, from September 24, 1984 through the date of this Memorandum.

## V.

Before reaching this conclusion the Court has carefully considered plaintiff's request and the Magistrate's Recommendation that, as a sanction, the Court enter a judgment for plaintiff or, at least, order a new trial.

Defendant contends in response to plaintiff's present motion for New Trial that (1) the jury was able to assess any inconsistencies between Mignona's deposition and trial testimony (as plaintiff's counsel was permitted to read to the jury the portion of Mignona's testimony which was apparently contradicted by his trial testimony); (2) contributory negligence (an issue independant of Mignona's testimony) was the critical issue in this case, strongly emphasized in defendant's closing presentation; and (3) more generally, the Court should not under all of these circumstances usurp the jury's function.

Despite the large number and severity of the discovery abuses detailed above, neither post-verdict entry of default against defendant nor grant of a third trial are warranted, for the record demonstrates that the jury was able to reach a fair determination on the merits in the second trial of this case. Sanction by way of entry of defendant's default is not required by the law of this jurisdiction and is not appropriate under the circumstances here. *See Aruba Bonaire, supra,* at 44 ("The sanction of dismissal [analogous to entry of default] is severe and should be employed only when absolutely necessary to effectuate the considerations [of deterrence].")

Plaintiff's motion for a new trial (after the *first* trial) was granted in part because "the Court should have permitted plaintiff to prove relevant regulations of the District of Columbia or should have given instructions on the subject." April 25 Memorandum at 2. This defect in the first trial was remedied in the second trial, in which plaintiff did introduce evidence regarding the D.C. Building Code and alleged violations thereof. The Court also instructed the jury that it could consider any demonstrated violations of the Building Code to be evidence that defendant was negligent. Thus, an important defect in the first trial (providing one basis on which the second trial was justified) was remedied in the second trial and provides no ground for a *third* trial of this matter.

The second trial was also justified in part because plaintiff at the first trial was "taken by surprise by the trial testimony of defendant's restaurant manager, John Mignona [,who] [c]ontrary to his deposition testimony ... stated at trial that the surface of the steps on which plaintiff fell had been treated in February, two months before the fall, rather than in April, shortly before the accident." *Id.* at 1. Although Mignona at the second trial once again appeared to contradict earlier deposition testimony by claiming that he had always understood Glitsa to be a non-slip surface, plaintiff was prepared and permitted to read to the jury those portions of Mignona's deposition testimony which seemed to contradict his testimony at trial. Determination of witness credibility is a vital aspect of the jury's role; at the second trial (in contrast to the first) plaintiff was able to present Mignona's earlier deposition testimony and contrary second trial testimony in a manner that enabled the jury to weigh the credibility of

Mignona's representations at trial as it reached its verdict.

Plaintiff's argument that defendant's belated production of Hoffman (its present general manager) for deposition required entry of default against defendant or a third trial is similarly unpersuasive. Although plaintiff and the Court were undeniably substantially inconvenienced by the obstructive behavior of defendant and defense counsel, plaintiff was able to depose the general manager before trial and adduce testimony from her at trial. When the Court declined plaintiff's invitation to enter default against defendant based on this and other transgressions, plaintiff did not press any argument that trial must be continued in order to allow plaintiff's counsel more time to consider how best to use Hoffman's belated deposition testimony. Upon consideration of all the circumstances surrounding Hoffman's deposition and trial testimony, the Court is not persuaded that defendant's delay in producing her for deposition materially affected the ability of the jury to reach a fair determination on the merits. Defendant's and defense counsel's actions with regard to producing Hoffman for deposition did, however, provide another significant ground for the sanctions that are herein imposed.

Perhaps more troubling to the decision to deny plaintiff's request for a new trial or entry of default against defendant is the problem of the documents discarded or destroyed by defendant sometime after plaintiff served defendant with discovery requests which encompassed those documents. Plaintiff at the second trial elicited testimony regarding the loss of those documents from defendant's general manager, and the jury was able to draw its own conclusions from that testimony. Defendant claimed, and has claimed throughout, that the documents were lost inadvertently, discarded in a "housecleaning" after Mig-

nona was replaced as general manager. The actions and inactions of defense counsel which resulted in the destruction of those documents are *at best* characterized as grossly negligent and provide yet another ground for the imposition of substantial sanctions. The Court is not persuaded that the loss of the documents justified entry of defendant's default or the use of the severe adverse inference instructions plaintiff requested.

Plaintiff's exhaustive discovery resulted in voluminous documents and deposition testimony with which plaintiff supported her argument at trial that: (1) defendant restaurant (individually and through information received in its capacity as a member in the Houlihan's chain) was aware that falls on slippery surfaces were a major cause of injury to workers and guests in restaurants; (2) the stairs on which plaintiff fell were not at the time of the accident covered as required by the D.C. Building Code with "non-slip" surfaces; and (3) "non-slip" strips were (and defendant knew or should have known that they were) a feasible method for reducing injuries due to slip and fall incidents. Plaintiff was even permitted, over strenuous objection from defense counsel, to impeach a recalcitrant witness with evidence of subsequent remedial repairs (i.e. installation of non-slip strips) on the stairs in question. Thus plaintiff was able to, and did, painstakingly support the arguments which, according to plaintiff's proffers, *might* have been further supported by the documents which were discarded.[10] The Court is not persuaded that the unavailability of these particular documents affected the ability of the jury to fairly determine the merits or warranted either the entry of defendant's default or the severe adverse inference instructions sought by plaintiffs. Such conclusion is supported by the substantial uncertainty as to whether the documents

10. Plaintiff was, even in the absence of the documents which were discarded or destroyed, able to support her presentation with substantial documentary evidence. Plaintiff herself recognized that "[b]ecause followup discovery provided documents superior to those that were

wrongfully withheld at the first trial but later produced, the followup materials were used at the second trial." Plaintiff's Response to the Defendant's September 24 Objection to Magistrate Dwyer's Opinion and Recommendation at 12 n. 6 (October 3, 1985).

were lost through inadvertence or because of actions taken in bad faith.

Defendant produced substantial evidence (from plaintiff's own deposition testimony) and argued forcefully that plaintiff was contributorily negligent and this negligence, rather than the condition of defendant's restaurant floors was the proximate cause of plaintiff's injury. Plaintiff's response was not substantial. Defendant's evidence of contributory negligence as the proximate cause of the injury was without question sufficient to permit defendant to withstand plaintiff's motion for a directed verdict and provides substantial support for the verdict reached by the jury.

In short, the evidence presented and the performance and arguments of counsel at trial require rejection of the Magistrate's recommendation that a default judgment be entered against defendant or, in the alternative, that plaintiff be permitted yet a third trial. Given (1) the historic function of the jury,[11] (2) the public policy of preference for resolution of disputes on the merits,[12] and (3) the evidence and arguments presented at the second trial, defendant's and defense counsel's abuses in the discovery stages of this litigation did not affect the presentation before the jury in a manner that would justify displacement of the jury's decision by a post-verdict entry of default against defendant or a vacation of the verdict and scheduling of a *third* trial. Plaintiff states that "[i]t would be unconscionable ... to subject the judicial system and plaintiff to yet another jury trial. Defendant has had two bites at the apple." Motion for New Trial at 10. As defendant correctly notes, *plaintiff* has had "two bites at the apple," and on both occasions the jury considered the evidence and returned a verdict for defendant. The entire circumstances in this protracted litigation preclude displacement of the verdict here.

## APPENDIX A

### OPINION AND RECOMMENDATION

This matter is before the Court, having been referred by the Honorable Louis F. Oberdorfer, Judge, for a ruling on numerous motions for sanctions, filed by plaintiff and opposed by defendant. On April 25, 1985, as a result of the consistent abuse of the discovery process on the part of defendant, Judge Oberdorfer issued an Order granting plaintiff a new trial for discovery abuses and, subsequently, referred additional sanctions motions to this Court.

In a Report issued by this Court on August 15, 1985, Magistrate Dwyer bifurcated this Court's consideration of the sanctions requested by plaintiff. It was recommended that the merits of the pending litigation be determined at trial, hence no sanctions were imposed at that time. It was and remains the intention of this Court, however, to recommend that substantial monetary sanctions be levied against the defendant and defense counsel. Except for those sanctions encompassed by the April 25, 1985, Order, all motions for sanctions and supporting documents (including filings on February 1, 5, and 6, 1985; March 1, 8, and 20, 1985; July 1, 9, 24, and 29, 1985; and August 19, 1985) as well as the entire record herein and oral argument heard by this Court on July 10, 1985, and August 1, 1985, provide the basis for this ruling.

### Findings of Fact

1. On December 4, 1984, Judge Oberdorfer granted plaintiff's motion for sanctions and required that the defendant make available by December 14 and 19, 1985,

---

11. *See generally Dick v. New York Life Ins. Co.,* 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959); *Lavender v. Kurn,* 327 U.S. 645, 652–53, 66 S.Ct. 740, 743–44, 90 L.Ed. 916 (1946); *Boutros v. Riggs National Bank,* 655 F.2d 1257, 1258 (D.C. Cir.1981); *Preston v. Safeway Stores, Inc.,* 163 F.Supp. 749, 752–53 (D.D.C.1958), *aff'd.* 269 F.2d 781 (D.C.Cir.1959).

12. *Cf. Hritz v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir.1984). *See also Aruba Bonaire,* discussed *supra* at 677; *Boazman v. Economics Laboratory, Inc.,* 537 F.2d 210, 212 (5th Cir. 1976) (Case should not be dismissed where less severe sanctions are appropriate).

APPENDIX A—Continued

respectively, its restaurant General Manager and Assistant Manager. The Court imposed the cost of transporting the witnesses to Washington, D.C. for deposition on defendant. The Court also denied defendant's cross-motion for sanctions.

2. The December 4, 1984, Order also required defendant to answer interrogatories 3 and 4 and document request 2 (from plaintiff's first set of discovery requests, filed July 5, 1984) by December 14, 1985.

3. On December 5, 1984, defendant purportedly provided the information sought in interrogatory 3 and document request 2.[1]

4. On December 12, 1984, defendant moved to reschedule the deposition of Mr. Mignogna, the restaurant's General Manager. The Court allowed defendant to delay the deposition until December 19, 1984, when discovery was to close.

5. During the December 18, 1984, deposition of the defendant restaurant's Assistant Manager, Ms. Weil, two sets of documents responsive to document request 2 and interrogatory 3 were "discovered" through her testimony. These reports included Worker's Compensation claims for slips and falls and reports of the restaurant's "Safety and Energy" committee. The defendant claims the failure to produce was due to counsel's inadvertence and, subsequently, produced the responsive documents.

6. Due to the delay in producing the responsive material, plaintiff was unable to use these reports in the depositions of Mr. Mignogna and Ms. Weil.

7. Mr. Mignogna, in deposition testimony, revealed that while he was General Manager he had kept a file which contained information relevant to plaintiff's document requests 5 and 6.[2] He further indicated that he had not been asked to review his files for pertinent material subject to plaintiff's discovery requests. (Plaintiff's Motion to Enforce Orders and Impose Sanctions, February 1, 1985, p. 12–13.) Defendant made no excuse nor offered any explanation for this failure to comply with discovery.

8. During the February 12, 1985, Pretrial Conference, Judge Oberdorfer considered the pending sanctions motions. As sanctions for the discovery abuses, Judge Oberdorfer precluded two of defendant's witnesses from testifying at trial and postponed ruling on two other failures by defendant (regarding the Worker's Compensation and Safety reports and the Mignogna file memoranda). The Judge, further, denied defendant's counter-motion for sanctions.

9. During the trial, February 19 and 20, 1985, the defendant restaurant's General Manager and Assistant Manager, in contravention of the "no witnesses" ruling by the Court, listened to the first day's proceeding through the crack in the courtroom door. Judge Oberdorfer permitted counsel to investigate this misconduct, before the jury, through testimony of the witnesses.

10. The jury returned a verdict for defendant, against plaintiff, on February 20, 1985.

11. On April 25, 1985, Judge Oberdorfer issued an Order granting plaintiff a new trial, due to the "discovery evasion" committed by defendant's counsel and the prejudice it engendered. In addition, he expressly allowed that other specific sanctions may be invoked.

12. On May 17, 1985, plaintiff moved to compel production of all discovery material that had been wrongfully withheld.

---

1. Interrogatory 3: For the period January 1, 1982, to date, identify each fall by a patron or employee of Houlihan's observed by or reported to any employee of Houlihan's, including the name, address, and telephone number of the victim of the fall, the date of the fall, and a summary of the circumstances of falls.

Document Request 2: Each document referring or relating to any other fall in Houlihan's over the period January 1, 1982, to date.

2. Document Request No. 5: Each document referring or relating to the risk of slips and/or falls on stairs or on uncarpeted floors.

Document Request No. 6: Each document constituting or referring or relating to instructions to or policies for Houlihan's employees relating to avoiding or preventing slips and falls.

APPENDIX A—Continued

13. On June 5, 1985, Magistrate Dwyer ordered the production of all discovery sought under the May 17 motion. Defendant complied without opposition.

14. Defendant filed supplemental responses and provided plaintiff's counsel access to numerous documents. Defendant averred, however, that the materials in Mr. Mignogna's file could not be located and had, apparently, been destroyed after Mr. Mignogna left the restaurant, and after plaintiff's document requests.

15. On July 10, 1985, the Magistrate conducted a motions hearing and, denying defendant's request for a protective order, directed defendant to respond to plaintiff's "follow-up" discovery. The Magistrate further ordered that, if plaintiff desired, the depositions of Mr. Mignogna and Ms. Weil be reconvened, at defendant's expense.

16. At the July 10, 1985, hearing, plaintiff expressed a desire to depose the present General Manager of defendant restaurant, Ms. Hoffman, if Mr. Mignogna's testimony indicated that the missing files existed at his departure from the restaurant. The defendant was directed to cooperate with such a deposition if it were necessary.

17. Plaintiff's attempts to depose the present General Manager on July 26, 1985, were unsuccessful because defendant objected to the timeliness of the plaintiff's notice, although counsel had informally agreed to a deposition of Ms. Hoffman.

18. Magistrate Dwyer conducted a hearing on the pending sanctions motions on August 1, 1985. During the hearing, plaintiff's counsel discussed the difficulties he had encountered attempting to depose the General Manager.

19. On August 7, 1985, Magistrate Dwyer entered an Order requiring defendant to make Ms. Hoffman available for deposition by August 16, 1985, and required plaintiff to provide not less than 24 hours notice of a scheduled deposition.

20. On August 13, 1985, Magistrate Dwyer conducted a conference call, at the request of counsel, in which it was learned that Ms. Hoffman was on vacation for the remainder of the week, thus precluding her deposition required by the August 7, 1985, Order.

21. On August 14, 1985, Magistrate Dwyer ordered that defendant make Ms. Hoffman physically available in Washington, D.C. for deposition before August 16, 1985, and required her to remain if she were subpoenaed for the upcoming trial on August 19, 1985. Defendant was to bear the expenses of her return to this jurisdiction.

22. After a hearing on August 16, 1985, appealing the Magistrate's August 14, 1985, Order, Judge Oberdorfer explicitly found defendant to be in violation of the Magistrate's Order of August 7, 1985, and affirmed her ruling of August 14, 1985.

23. Defendant's counsel represented to the Court on August 16, 1985, that she did not know of Ms. Hoffman's whereabouts.

24. Judge Oberdorfer, after a further hearing to show cause why defendant should not be found in contempt, entered an Order ruling that defendant was in contempt of court and assessing a civil contempt penalty in the amount of $5,000 a day for each day Ms. Hoffman failed to appear for deposition.

25. On August 12, 1985, the date on which defendant received the notice of Ms. Hoffman's deposition, she had not yet left the area for her vacation although she was not at the restaurant itself.

26. Ms. Hoffman had left the telephone number at which she could be reached while on vacation, according to company policy, prior to her departure.

27. Defendant restaurant's acting general manager, Mr. Greg Smith, telephoned Ms. Hoffman, at the place where she was vacationing and spoke with her. This occurred prior to the date for her deposition and prior to the hearing before Judge Oberdorfer on August 16, 1985.

28. After the contempt Order on August 16, 1985, counsel advised the defend-

APPENDIX A—Continued

ant of the ruling, and Ms. Hoffman was again called at her vacation location.

29. On August 17, 1985, Ms. Hoffman, with counsel, appeared for deposition. She refused personal service of a trial subpoena but was available and did testify at the second trial on August 19, 1985.

30. The jury returned a verdict for defendant, against plaintiff, on August 21, 1985.

## CONCLUSIONS OF LAW

Plaintiff seeks the imposition of severe sanctions: default judgment and/or imposition of liability, against the defendant for what she alleges to be wilful and grossly negligent conduct during the discovery phase of both trials. Defendant does not dispute that abusive conduct occurred, it claims, however, that the abuse was not wilful. To facilitate the scheduled trial, the Court entered the first portion of its recommendation on August 15, 1985. Subsequent to that report, a series of events occurred regarding defendant's failure to comply with this Court's Order of August 7, 1985, requiring the deposition of the present General Manager of Houlihan's in Georgetown. These events, when combined with the previous pattern of defendant's conduct in this case, strain the credibility of defense counsels' repeated assertions that they are acting in good faith.

Notwithstanding the characterizations offered by defense counsel, there is ample evidence that the defendant deliberately failed to comply with discovery requests; has been unnecessarily obstructive in providing pertinent documents and witnesses for depositions; has failed to obey Court Orders; and, has failed to maintain files (particularly those kept by the General Manager of Houlihan's/D.C.) potentially relevant to this litigation. It is clear from the record that defendant's counsel has, with regularity, exceeded the bounds of zealous representation and ignored the obligations implicit in the Federal Rules of Civil Procedure (Rules) to cooperate, in good faith, during the discovery process. *See*, Fed.R.Civ.Pro. 11.

In addition to the abuses catalogued in the Findings of Fact, many discovery responses were provided only after repeated judicial intervention. For example, the December 4, 1984, Order, requiring several documents to be produced, went unheeded, resulting in another Order, on April 25, 1985, granting a new trial. This Order specified defendant's failure to produce corporate headquarters documents, information concerning "Glitsa," the stairway surfacing at defendant restaurant, and safety reports for each of twelve previous slip and fall cases, all relevant to the trial, had prejudiced plaintiff's efforts to obtain a fair trial. The June 5, 1985, Order, which defendant did not oppose, again required production of these same requests. At a hearing on July 10, 1985, this Court was compelled to impose, expressly on defendant's counsel, the burden of viewing other sources of the "Mignogna file" information from headquarters that had not been searched prior to the hearing. In addition, this Court further ordered that defendant provide supplemental answers concerning the use of "Glitsa." It was defendant's evasive approach in the discovery phase of both trials which permitted defendant to delay the production of discoverable information that plaintiff had requested nearly a year earlier in the first discovery filings. Moreover, the Court was required to enter four orders, impose the expense of additional depositions, and order a new trial before defendant complied by producing responsive discovery.[3]

Defendant has, to date, been subject to several rulings imposing sanctions including: the exclusion of two witnesses from both trials, the expense of taking additional deposition testimony from Mr. Mignogna, a new trial and a finding of civil contempt. The second trial having concluded, the remaining effect sanctions would now have is

---

**3.** Further frustrating the Court's effort to oversee discovery, the "Mignogna file" was never satisfactorily reconstructed from other sources.

APPENDIX A—Continued

the so-called "deterrent" effect inherent in Rule 37 of the Federal Rules of Civil Procedure. *See National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Weisberg v. Webster*, 242 U.S.App.D.C. 186, 749 F.2d 864 (D.C.Cir.1984); *Dellums v. Powell*, 566 F.2d 231, 235 (D.C.Cir.1977).

It is well-recognized in this Circuit that severe sanctions should be imposed, within the discretion of the trial judge, only when "necessary to induce future compliance and preserve the integrity of the system." *Weisberg v. Webster*, 749 F.2d at 869, *citing, Litton Systems Inc. v. American Tel. and Tel. Co.*, 91 F.R.D. 574, 576 (S.D.N.Y. 1981), *aff'd*, 700 F.2d 785 (2d Cir.1983). Such sanctions have included dismissal of a pending action,[4] where, under Rule 37(b), a party fails to answer interrogatories, and for failure to comply with other discovery requests. *See National Hockey League*, 427 U.S. at 643, 96 S.Ct. at 2781; *Dellums v. Powell*, 566 F.2d at 235; *Weisberg v. Webster, supra.* Counsel has also been held personally liable for sanctions, including attorney's fees, when discovery orders have not been followed. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Even in cases where the sanction itself was overturned, the Supreme Court and this Circuit have re-affirmed the Court's authority to take drastic measures when required by a party's behavior and attitude. *See Societe International v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *Black Panther Party v. Smith*, 213 U.S.App.D.C. 67, 661 F.2d 1243 (D.C.Cir.1981), *judgment vacated sub nom., Moore v. Black Panther Party*, 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982). The authoritative law in this Circuit supports Rule 37 sanctions on the face of wilful and obstructive conduct.[5]

On August 15, 1985, this Court set aside its consideration of plaintiff's request for sanctions until final adjudication of the merits of this litigation. This Court was reluctant to impose harsh sanctions such as default judgment or dismissal in light of the fact that trial was to commence the following week and for reasons of sound public policy to decide a case on its merits. *See Hritz v. Woma*, 732 F.2d 1178 (3rd Cir.1984); *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir.1977), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978); *Reizakis v. Loy*, 490 F.2d 1132 (4th Cir.1974). However, the overall conduct of defendant throughout this case clearly indicates wilful misconduct, flagrant bad faith and callous disregard of the obligations incumbent upon parties under the Rules. It would be contrary to the very essence of the Rules to permit defendant to profit from a favorable verdict in light of the gross misconduct exercised in litigating this action. *See National Hockey League v. Metropolitan Hockey Club*, 427 U.S. at 643, 96 S.Ct. at 2781; *Societe Internationale v. Rogers*, 357 U.S. at 212, 78 S.Ct. at 1096.

In *Cine Forty-Second Street Theatre v. Allied Artists*, 602 F.2d 1062, 1066 (2nd Cir.1979), the Court instructed that:

> Rule 37 strictures are ... specific deterrents and, like civil contempt, they seek to secure compliance with the particular order at hand.... [A]lthough the most drastic sanctions may not be imposed as 'mere penalties,' ... *courts are free to*

---

4. For the purposes of this opinion, no viable distinction can be made between the finding required to dismiss an action and to enter a default against a party to an action.

5. In *Smith v. Schlesinger*, 513 F.2d 462 (D.C.Cir. 1975), the Court stated that "[t]he 'preclusion' sanction employed by the District Court is properly employed against a willful violation of a discovery order." Citing the following cases with approval: *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858 (5th Cir.1970); *Von der Heydt v. Kennedy*, 112 U.S.App.D.C. 78, 299 F.2d 459, 462, *cert. denied*, 370 U.S. 916, 82 S.Ct. 1554, 8 L.Ed.2d 498 (1962). *See also General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1211 (8th Cir.1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); *Bon Air Hotel, Inc. v. Time, Inc.*, 376 F.2d 118 (5th Cir. 1967), *cert. denied*, 393 U.S. 859, 89 S.Ct. 131, 21 L.Ed.2d 127 (1968); *Gill v. Stolow*, 240 F.2d 669 (2nd Cir.1957); *Sher v. DeHaven*, 91 U.S.App. D.C. 257, 199 F.2d 777 (1952), *cert. denied*, 345 U.S. 936, 73 S.Ct. 797, 97 L.Ed. 1363 (1953).

APPENDIX A—Continued

*consider the general deterrent effect their orders have on the instant case and on other litigation,* provided that the party on whom they are imposed is, in some sense, at fault. *Id.* (citations omitted) (emphasis added)

A default judgment should not be imposed where less severe sanctions are appropriate. *See Boazman v. Economics Laboratory, Inc.,* 537 F.2d 210, 212 (5th Cir.1976). However, in the instant case the imposition of a lesser sanction would not serve the best interests of justice. *See e.g., National Hockey League v. Metropolitan Hockey Club,* 427 U.S. at 643, 96 S.Ct. at 2781 (imposition of a lesser sanction than dismissal would permit other parties to other lawsuits to flout discovery orders).

In response to the allegations contained herein, defendant's counsel maintains that the abuses were inadvertent and caused plaintiff no prejudice. Further, defendant believes that the sanctions previously imposed are more than sufficient for the allegedly minimal non-compliance during discovery.[6]

Standing alone, this Court might be persuaded that defendant did not act with "callous disregard" for its obligations to proceed in good faith and abide by orders of this Court. *See National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2781. Taken together, however, the conclusion that defendant and defendant's counsel proceeded according to their own determination of the appropriate course of discovery, even in the face of Court orders to the contrary, is unmistakable. Likewise, it is indisputable that plaintiff had little success in obtaining the *most* relevant discovery—documents concerning other accidents, safety reports, and deposition testimony of the managing agent of the defendant restaurant—until the Court had to intercede with numerous orders compelling production.

The most recent example of this behavior illustrates the recalcitrant approach taken by the defendant to this litigation. Defendant objected to the notice provided by plaintiff to take the deposition of Ms. Janet Hoffman in late July.[7] At a hearing on August 1, 1985, arrangements for deposing Ms. Hoffman were discussed. An Order requiring Ms. Hoffman's availability was entered on August 7, 1985. It was not until plaintiff issued another notice, in accordance with the August 7, 1985, Order, that defendant's counsel attempted to secure Ms. Hoffman's presence.[8] An additional Order, necessitated by the telephone conference advising this Court of Ms. Hoffman's vacation, reiterated this Court's requirement that Ms. Hoffman be available, in the Washington area, for deposition by August 16, 1985. However, notwithstanding the fact that one of defendant's agents had spoken with Ms. Hoffman before the hearing appealing the August 14, 1985, Order, Ms. Hoffman was not produced for the deposition until the defendant was confronted with a serious fine for civil contempt. There is ample evidence that, after three hearings, four orders, and a telephon-

6. In fact, defendant contends, yet again, that plaintiff has abused the discovery process and should be penalized. This strategy was rejected, out of hand, by Judge Oberdorfer. This Court does not find, nor does the defendant list, any failure by plaintiff to comply with Court orders. Defendant's assertions that plaintiff has filed more paper than necessary for an ordinary slip and fall case do not indicate abusive conduct. In fact, many of plaintiff's motions have been the direct result of defendant's discovery conduct; therefore, if defendant feels buried by the motions and pleadings filed, it has only its own behavior to blame.

7. See Findings of Fact No. 17.

8. Defendant bases most of its argument regarding Ms. Hoffman's deposition on the fact that notice was not received until after her vacation had commenced. Any serious effort to contact Ms. Hoffman on the afternoon of August 12, 1985, might have succeeded since Ms. Hoffman herself indicates that she was at home when the notice was received by counsel. Apart from that, defendant was obligated, no later than August 8, to determine Ms. Hoffman's schedule so as to comply with the Court's Order compelling her availability for deposition. Particularly in light of all that had transpired previously, this Court is astounded that counsel took no steps whatsoever to comply with the August 7 Order until August 12 and, even then, made less than a diligent effort.

APPENDIX A—Continued

ic conference call regarding the scheduling of a single deposition, the defendant's counsel had stretched judicial patience beyond a reasonable limit. "If parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules." *Dellums v. Powell*, 566 F.2d at 235–6.

Moreover, this incident followed the well-documented history of discovery abuses by defendant. Indeed, a similar attempt to delay or deny plaintiff the opportunity to depose the former General Manager and Assistant Manager preceded the first trial.[9] Similarly, documents that should have been produced in the early fall of 1984 were delayed until, after a series of orders, they were eventually produced within a month of the second trial.[10] In the light of this history, any argument by defendant that it cooperated with plaintiff's discovery needs is, at best, disingenuous.[11]

The most egregious abuse, however, is one that also severely handicapped plaintiff's ability to determine what information the defendant restaurant had regarding the safety of the stairway prior to plaintiff's fall. The "Mignogna file," containing responsive documents to plaintiff's discovery, was "destroyed" after defendant represented that no responsive documents had been located. It was later discovered that Mignogna had not been asked to review his file for pertinent material and, in fact, relevant material would have been maintained in the file. Defendant offers no explanation for its failure to inquire and produce the documents in Mignogna's custody prior to their destruction. Clearly, defendant's conduct violates Rule 37(d).

Defendant's claim that plaintiff has not been prejudiced by its pattern of abuse is patently untenable. Not only has she been hindered in the preparation of her case, she has incurred substantially greater costs, in time and attorneys's fees, than would normally be expected by a plaintiff litigating a negligence action. Plaintiff and her counsel have been required to prepare for two trials, numerous hearings and, as defendant points out, substantial motions and pleadings.

Defendant's consistent abuse of the discovery process can, at worst, be characterized as wilful and knowing disobedience of numerous Court Orders, and, at best, be held to exhibit unusual intransigence in spite of numerous Court Orders. Indeed, "[t]he deterrence goal mandated by the Supreme Court [in *National Hockey League* ] combined with either violation of a valid discovery order or unusual intransigence by a party support a [default]." Opinion and Recommendation, *Kern v. District of Columbia*, C.A. No. 79–0319, Magistrate Dwyer, filed August 21, 1981.

If it is found, however, that a lesser sanction is appropriate, then this Court recommends that plaintiff's motion for a new trial be granted. *See* Plaintiff's Motion for New Trial, Default, and Other Relief, filed August 27, 1985. Indeed, the obstruction and evasion of the discovery process was so highly prejudicial to plaintiff's preparation for trial that nothing less than the imposition of a new trial is warranted.

Accordingly, it is by the Court this 11th day of September, 1985,

STRONGLY RECOMMENDED, where lesser sanctions having proved only partially effective, that a default judgment be entered against defendant pursuant to Rule 37(b)(2)(C). It is

9. See Findings of Fact No. 4.

10. See Findings of Fact No. 14.

11. It is difficult to distinguish whether the failure to comply resulted from wrongdoing by the defendant or the defendant's counsel. Most likely, the combination of abusive conduct by

both led to most of the discovery problems before the Court. Therefore, we believe it appropriate that sanctions be levied against both the party defendant and defendant's counsel. *See Roadway Express*, 447 U.S. 752, 763, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980).

APPENDIX A—Continued

FURTHER RECOMMENDED that a damages hearing be conducted, pursuant to Rule 55(b)(2) of Federal Rules of Civil Procedure, and that damages be awarded to plaintiff against defendant in the amount determined therein. It is

FURTHER RECOMMENDED that defendant and defendant's counsel be required to pay plaintiff for the costs and expenses she sustained in litigating the trials of her negligence claims, including attorney's fees. It is

FURTHER RECOMMENDED that plaintiff shall submit affidavits itemizing her attorney's fees and costs sustained in this litigation.

FURTHER RECOMMENDED, in the alternative, that plaintiff's motion for a new trial be granted and defendant and defense counsel be required to pay reasonable costs and expenses plaintiff sustained in litigating the first and second trial, including attorney's fees. It is

FURTHER RECOMMENDED that defendant and defense counsel be required to pay reasonable costs and expenses plaintiff sustains in litigating the new trial, including attorney's fees. It is

FURTHER RECOMMENDED that any opposition to plaintiff's itemization of costs and attorney's fees shall be due ten (10) days after the entry of a final judgment on plaintiff's sanctions motion.

/s/ Jean F. Dwyer
JEAN F. DWYER
United States Magistrate